THE STATE ex rel. PEARSON, Collector, Appellant,
v. LOUISIANA & MISSOURI RIVER RAILROAD COMPANY and CHICAGO & ALTON RAILWAY COMPANY.

Division One, May 30, 1906.

1. **TAXATION: Double: Allowable by Statutes.** Double taxation of the same property is not favored and is never presumed. Especially should this rule prevail, both as to legislative acts and in their application, where the Constitution contains an express provision requiring equality and uniformity in the imposition of taxes upon property. And where there is such a constitutional provision, as there is in this State, it will not be held that property, liable to be taxed under one provision of the statutes, was intended to be subject to another tax under general words in a statute which would seem to imply that it may be taxed a second time.

2. ———: ———: Railroads and Bridges. Where a railroad bridge has been assessed and taxed for a certain year as a part of the railroad the bridge cannot again be taxed as separate property.

3. ———: ———: ———: Lessor and Lessee. And where the bridge is owned by one railroad company, and the bridge and railroad tracks, switches, etc., are leased by that company in perpetuity with a defeasance clause to another railroad company, and the entire property is assessed and taxed to the lessor, but the taxes paid by the lessee, neither the lessor nor the lessee can be held for further taxes against the bridge.

4. ———: Railroad Bridge: How Assessed. Under sections 7717 and 7718, Revised Statutes 1889, a railroad bridge owned by a railroad company, and constituting a part of the track, is taxable only as a part of the railroad's tracks and not as a separate structure, notwithstanding it is used in part as a toll bridge.

5. ———: Joint Stock Companies: How Assessed. Section 7755, Revised Statutes 1889, says: "All bridges over streams in this State, or over streams dividing this State from other States, owned by joint stock companies, and all such bridges where a toll is charged for crossing the same . . . shall be subject to taxation." *Held*, that, under section 2480, Revised Statutes 1889, which says that "the term 'corporation' as used in this chapter shall be construed to include all stock companies or associations having any power or privileges not possessed by individuals or partnerships," a railroad corporation owning a bridge over the Mississippi river, and charging tolls for its use, is taxable under said section 7755 for such bridge.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,* Judge.

Affirmed.

*J. W. Jump, J. D. Hostetter, J. W. Reynolds, Ball & Sparrow,* and *Pearson & Pearson* for appellant.

(1) The bridge in question comes under both classes of structure made taxable by section 7755 Revised Statutes 1889, to-wit: (a) A bridge owned by joint stock company; and (b) a bridge where a charge is made for crossing the same, namely a toll bridge. That this particular bridge is owned and controlled by

a joint stock company, within the meaning of the stat-
ute, was determined and adjudicated by this court in
State ex rel. v. Bridge Co., 109 Mo. 257. This doctrine
is reiterated, and reaffirmed, by this court, in the same
case, upon a second appeal. State ex rel. v. Bridge Co.,
134 Mo. 329. At the time this bridge was under consid-
eration, in this court, in the 109th and 134th reports,
the paramount title to the bridge property was in the
Mississippi River Bridge Company; and the road and
roadbed in connection with which the bridge was used
was operated, managed and controlled by the Chicago
& Alton Railroad Company. On the 29th day of April,
1895, the Mississippi River Bridge Company conveyed,
by quitclaim deed, the paramount title in the bridge
property to the Louisiana & Missouri River Railroad
Company. At the time of the trial of the case at bar,
the paramount title to the bridge property was and is
in the Louisiana & Missouri River Railroad Company;
and the road and roadbed is operated, managed and
controlled by the Chicago & Alton Railway Company.
That this bridge is and has always been used, and re-
tained, as a toll bridge, we do not think there is any
question under the evidence. Every passenger pays
more for riding over this bridge, than he pays for rid-
ing the same distance over any other portion of the
roadbed, used in connection with said bridge, on either
side of the bridge; and this extra pay is the toll exacted
and charged the passenger for the privilege of riding
over or across said bridge. This bridge is also used by
the C. B. & Q. Railroad Company, and it pays for the
use of the same, a certain sum for every passenger it
carries over this bridge. And this is practically the
same arrangement had with the bridge company when
it was operated by the Mississippi River Bridge Com-
pany. State ex rel. v. Bridge Co., 109 Mo. 258. If it
was taxable then as a toll bridge, it is taxable now.
(2) The status of this particular bridge, as to whether
it is taxable as a bridge or as a part of the roadbed,

was fixed by this court years ago, in a case that was before this court twice upon appeal: State ex rel. v. Bridge Co., 109 Mo. 253, 134 Mo. 321.

*Scarritt, Griffith & Jones* for respondents.

(1) If the court's peremptory instruction given for defendants at the end of all the evidence is correct, then errors, if any, in the giving and refusal of other instructions are immaterial.   The taxes in question being for the year 1900 were assessed in July, 1899, as of June 1, 1899, under authority of section 7755, Revised Statutes 1889.  It appears both from the petition and from the proof that the bridge in question belongs to the railroad company and not to a joint stock company and is therefore clearly not taxable under this statute, unless it is a toll bridge.  And if certain charges were incidently made and collected for crossing this bridge, it still would not be a toll bridge within the meaning of section 7755 and taxable as a separate structure, if the bridge was an integral part of the railroad, for it was then taxable as a part of the railroad line under sections 7717 to 7754, Revised Statutes 1889.  State ex rel. v. Railroad, 97 Mo. 348.   (2)   The bridge in question is not a toll bridge within the meaning of section 7755, Revised Statutes 1889.   (a)  It is not chartered as a toll bridge.   (b)   There is no proof that tolls are exacted for crossing the bridge in question.   The evidence is that the bridge is an ordinary railway structure.   It does not appear that any other vehicle than a train can cross the same nor that even a footpath for pedestrians is provided.  It does not appear that there are toll gates on the bridge, or a tollkeeper; or that there are signs such as are usually found at toll bridges announcing the tolls for various vehicles; nor that trains are stopped thereon or at either end thereof, nor that the passengers on trains are counted, nor tickets taken up from them on approaching the bridge.   State

ex rel. v. Railroad, 97 Mo. 348. (c) The claim of plaintiff that this is a toll bridge is based solely upon some testimony to the effect that the railroad fare charged by defendant company from Louisiana, Missouri, to Pleasant Hill, Illinois, and certain other Illinois points, was greater than that charged between Louisiana and local points in Missouri. There is no proof that such excess tariff was toll for crossing the bridge in question. (d) Plaintiff does not state a cause of action for taxes against this structure as a toll bridge. It is not alleged in the petition that this is a toll bridge. Barker v. Railroad, 91 Mo. 94; People v. Railroad, 63 Cal. 392; Railroad v. Commonwealth, 92 Ky. 64; Sickle v. Belknap, 129 Ind. 558; Gas. Co. v. People, 138 Ill. 344. (3) The bridge in question being an integral part of the railroad line, is not taxable under section 7755, Revised Statutes 1899. (a) Article 8, chapter 138, Revised Statutes 1889 (being sections 7717 to 7754), provides for the taxation of all railroad property in this State, including the roadbed itself, according to its mileage in each county, municipal township and incorporated city. State ex rel. v. Railroad, 97 Mo. 354. Sec. 7755, Revised Statutes 1889, should not be read so as to conflict with or repeal any part of the law just referred to. To prevent such a result the proper and consistent construction of said section 7755 is that it does not apply to a bridge that belongs to and forms an integral part of a particular railroad, but only to a bridge that is in fact a separate structure, an entity to itself. This is expressly and clearly decided by the Supreme Court in the case of State ex rel. v. Railroad, supra. (b) The bridge in question is an integral part of defendant's railway line. The evidence is clear, convincing and uncontradicted upon this point. State ex rel. v. Railroad, 97 Mo. 348; Bridge Proprietors v. Hoboken Co., 1 Wall. 116; Railroad v. Supervisors, 48 Wis. 666; Anderson v. Railroad, 117 Ill. 26. (c) Indeed, the people and the officials of the State and of Pike county

are estopped from asserting or claiming that this bridge is not a part of defendant's railway line. The evidence is clear and uncontradicted that in the same year, the 1899 assessment for the 1900 taxes, that part of this bridge which is within Pike county, and is described in the petition, was included in the mileage of defendant's railroad, certified by the county court of Pike county, to the State Auditor; that the state authorities assessed the same as a part of the railroad and that the county and city officials collected and receipted for taxes upon this bridge and the half mile of right of way alleged in the petition to be a part of this bridge as a part of defendant's railway property. It will not be contended that by section 7755 the Legislature intended to provide for double taxation of any property. Even when constitutional it is held that double taxation must be provided for by the Legislature in clear and unmistakable terms. Double taxation is never presumed. Sec. 4, art. 10, Const.; Rice Co. Comrs. v. Bank, 23 Minn. 280; City v. Railroad, 27 Mo. 265; Valle v. Zeigler, 84 Mo. 214. (4) Section 7755 does not in any event authorize the tax in question upon the property described in the petition. The description in the records of the Board of Equalization, "Portion of the Bridge of the Louisiana & Missouri River Railroad Company at Louisiana," is too vague to support a tax. State ex rel. v. Railroad, 114 Mo. 1; City of Jefferson v. Whipple, 71 Mo. 519.

LAMM, J.—The statement of facts furnished by the learned aggregation of counsel representing plaintiff, appellant here, seems colorless and fair as far as it goes, and is adopted *pro tanto*. Thus:

"This is the suit for delinquent taxes for 1900, on a railroad bridge across the Mississippi river at Louisiana, Pike county, Missouri. The defendant, the Louisiana & Missouri River Railroad Company, is a Missouri railroad corporation, and owns a line of railroad, in-

cluding so much of the bridge in controversy as is in the State of Missouri, from the middle of the Mississippi river, at the City of Louisiana, Missouri, to Mexico, Missouri; thence to Cedar. City. It acquired title to so much of said bridge in controversy as is in the State of Missouri from the Mississippi River Bridge Company by quitclaim deed dated April 29, 1895. The remainder of its line of railroad, it has owned since the date of its construction in 1870. On August 1, 1870, said defendant, Louisiana & Missouri River Railroad Company, leased its railroad aforesaid to the Chicago and Alton Railway Company for a term of one thousand years. On April 3, 1900, said Chicago & Alton Railroad Company subleased said railroad, including so much of the bridge in controversy as is in the State of Missouri, to the defendant, Chicago & Alton Railway Company for ninety-nine years. Defendant, Chicago & Alton Railway Company, is an Illinois railroad corporation, and, as such, operates, manages and controls a line of railroad from Chicago, Illinois, over the bridge in controversy, across the Mississippi river, and the line of road owned by defendant, Louisiana & Missouri River Railroad Company, to Kansas City, Missouri. While. the bridge in controversy is owned by defendant, Louisiana & Missouri River Railroad Company, it is leased, operated, managed and controlled by defendant Chicago & Alton Railway Company, both of which are railroad corporations.

"On July 20, 1900, the State Board of Equalization proceeded to assess, adjust and equalize the valuation of that portion of the aforesaid bridge that was in the State of Missouri, belonging to defendant Louisiana & Missouri River Railroad Company on July 1, 1899, for the taxes of 1900, and fixed the value of said portion of said bridge at one hundred and fifty thousand dollars. This action of the state board was certified by the State Auditor to the clerk of the county court of

Pike county.   Thereafter, the county court proceeded to make a levy of taxes, on the valuation fixed by the State Board of Equalization, for ·state, county, township, and for Louisiana city and school taxes.   The taxes were extended in a separate railroad tax-book by the county clerk, which said tax-book was afterwards delivered to plaintiff, who was the collector, and his re-ceipt taken therefor.   Said taxes becoming delinquent, this suit was instituted to recover the same.   A trial being had before the court, sitting as a jury, judgment was rendered for defendants.   An appeal was taken; and this case is now before this court for review on a complete transcript of the record and testimony.''

The cause is submitted by respondents on the theory that the taxes in question were assessed under authority of section 7755, Revised Statutes 1889 — said section having been materially amended and brought forward in Revised Statutes 1899 as section 9387—but (it is contended by respondents) said amendments did not go into effect until several months after the date as of which the assessment was made.

Appellant's counsel, as we understand their brief in reply, concede the foregoing contention and seek to' avoid its force by planting their case on the same statute, thus: ''The bridge in question comes under both classes of structure made taxable by section 7755, Revised Statutes 1889, to-wit:  (1)  a bridge owned by a joint stock company; and (2) a bridge where a charge is made for crossing the same, namely, a toll bridge.''

With the foregoing concession in the case, this court may be allowed to accept the theory of counsel that the old section, 7755, is here for construction and that we have nothing to do with section 9387, Revised Statutes 1899, in passing on the pending appeal.

Section 7755, supra, passed in 1877 (Laws 1877, p. 391), was carried into the revision of 1879, as section 6901, and (improved in grammar) into Revised Statutes 1889, substantially as originally enacted, and

remained the law until sweepingly amended in 1899—said section reading as follows:

"All bridges over streams in this state, or over streams dividing this state from other states, owned by joint stock companies, and all such bridges where a toll is charged for crossing the same, which are now constructed, which are in the course of construction or which shall hereafter be constructed, and all property, real and personal, including the franchises owned by telegraph and express companies, shall be subject to taxation for state, county, municipal and other local purposes, to the same extent as the property of private persons, and taxes levied thereon shall be levied and collected in the manner as is now or may hereafter be provided by law for the taxation of railroad property in this state; and county courts, and the county and state boards of equalization, are hereby required to perform the same duties, and are given the same powers in the assessing, equalizing and adjusting the taxes on the property set forth in this section, as the said courts and boards of equalization have, or may hereafter be empowered with, in the assessing, equalizing and adjusting the taxes on railroad property; and the president or other chief officer of any such bridge, telegraph or express company, or the owner of any such toll bridge, is hereby required to render statements of the property of such bridge, telegraph or express company, in like manner as the president or other chief officer of railroad companies is now or may hereafter be required to render for the taxation of railroad property."

It is affirmed by appellant and denied by respondents that the taxes in question were legally assessed, *i. e.,* that the technical requirements of the law in matters of detail were complied with, and suggestions are made pro and con on that issue. The facts underlying this contention, as well as the suggestions made thereon by counsel, are immaterial in the view we take of the whole case, and hence will be put to one side.

In passing, it may be said appellant was allowed twelve out of thirteen instructions asked, and respondents were allowed nine out of the twenty-four prayed by them. However, one of the instructions given for respondents was a mandatory instruction, as follows: "6. The court declares the law to be that under the law and the evidence the verdict must be for the defendants."

Hid as a sting in the tail or last clause of instruction numbered 13 given for respondents was another mandatory instruction, overlooked, presumably, in the volume of literature presented to the court, since for all the practical purposes of jurisprudence *one* peremptory instruction seems (and usually is) effective as a *coup de grace* — unless we are to graft the dogma of punishment after death on the law.

The only assignments of error made pertain to the giving and refusing of instructions, and, herein, of the giving of the mandatory instruction, the large question being on the latter, and in connection with its consideration any other necessary record facts will appear. Was there error in giving the mandatory instruction? We think not, because:

I.  Respondents filed separate answers. In that of the Alton Railway Company it is alleged that the portion of the bridge in question was returned to the board of equalization as part of the roadbed and railroad track, was assessed and its value equalized as such, the tax levied and extended thereon as such for the year 1900, demanded by the collector of Pike county and paid. And it must be admitted defendants introduced evidence tending to support that allegation. A map used at the trial and put in evidence has not been presented here, and in interpreting the testimony the best we can, in connection with the explanations of this map, it would seem there was substantial evidence tending to show the approaches to the bridge, as well as that portion of the bridge itself on the Missouri

side, and between two and three thousand feet of right of way, described in the petition as subject to the tax, were assessed and the taxes extended thereon as part of defendant's railroad for the year 1900. These taxes amounted to about $5,000 and were paid, as said, by the Alton Railway Company—said last-mentioned company being bound by the contract creating its leasehold estate to pay taxes assessed against its co-respondent. It appears in this connection that the president of the owning .corporation, to-wit, the Louisiana & Missouri River Railroad Company, or the other chief officer thereof, or any other person for it, made no return of the said bridge, *eo nomine,* for taxing purposes as provided by section 7755 and cognate sections following; but, on the other hand, by the measurements and returns made, undertook to merge said bridge and· its approaches into its roadbed and railroad track, its measurement and description being "from the middle of the main or navigable channel of the Mississippi river to the western boundary of," etc., and there was evidence indicating that the State Board of Equalization adopted the same measurements, covering the same property, in equalizing and assessing the track and roadbed. For instance, on the seventy-first day of its session the said board, as shown by its records, "proceeded to assess, adjust and equalize the value of the roadbed and *superstructure* of the following railroad and railway companies on the 1st day of June, 1899, for the taxes of 1900: . . . Louisiana & Missouri River Railroad Company, $15,500 per mile; . . . " In certifying its action to the railroad company, the State Auditor certified the same figure as the assessed valuation of the roadbed and "superstructure," including side tracks. There was evidence that the word *superstructure* in the technique of railroading and in the parlance thereof means the upper part of railroad bridges. Other evidence tending to prove that the board of equalization in fact included bridge, ap-

proaches and the right of way covered by the petition in the equalization and assessment of taxes upon the roadbed and railroad track, was introduced, but need not be set forth.

It must be said, on the other hand, that by other proceedings of the board of equalization and certificates of the auditor, and the proceedings of the county court of Pike county thereon, it was shown that said board and the county court of Pike county undertook to treat the bridge and its approaches (at least, the bridge itself) as a piece of property separable from the railroad track and roadbed, and accordingly, assessed the same as bridge property—the proceedings of the board showing, *inter alia,* as follows: "On motion the board proceeded to assess, adjust and equalize the valuation of bridges belonging to the following bridge companies, railroad companies and individuals on the first day of June, 1899, for the taxes of 1900 and having duly considered all the evidence in relation to the same, fixes the values as follows: ". . . . Portion of the bridge of the Louisiana and Missouri River Railroad Company at Louisiana, $150,000." This action was followed by an assessment, a certificate from the State Auditor and a levy by the said county court.

In effect the contention of appellant on this behalf is that the legal, and, hence, the proper way to assess and levy this tax was against the bridge and its approaches as a bridge detached from the roadbed and, hence, the assessment as a bridge and the tax levied thereon, being valid, must stand; and furthermore, as we infer, appellant does not care to concern itself with whether or not the State Board of Equalization in fact (consciously or otherwise) merged bridge into roadbed and track, and, to all intents and purposes, assessed it as part thereof.

There being evidence from which the court could find the same property had been assessed and the taxes

for 1900 paid in another form, we confront the question of double taxation.

Under one subtle form or other, duplicate taxation may edge itself, at least in a speculative way, into taxing schemes where the intent of the lawmaker is unmistakable; but double taxation is not favored and is never presumed. [Tennessee v. Whitworth, 117 U. S. l. c. 137.]

In Rice Co. Comrs. v. Bank, 23 Minn. 280, it was said: "The general policy of the law is to avoid duplicate taxation. No one subject of taxation ought to be required to contribute more than once to the same public burden, while other subjects of taxation, belonging to the same class, are required to contribute but once. In the exposition of any tax law, therefore, a construction leading to any such result should be avoided, unless the cogency of some express provision or unavoidable implication of the statutes compels its adoption. Says Judge Cooley, in his valuable treatise on the law of taxation: 'It is a fundamental maxim in taxation that the same property shall not be subject to a double tax payable by the same party, either directly or indirectly; and, when it is once decided that any kind or class of property is liable to be taxed under one provision of the statute, it has been held to follow, as a legal conclusion, that the Legislature could not have intended the same property should be subject to another tax, though there may be general words in the law which would seem to imply that it may be taxed a second time.' [Cooley on Taxation, 165, and authorities cited in the notes.] Especially should this rule obtain in the courts of a State whose Constitution contains an express provision requiring equality and uniformity in the imposition of taxes upon property, according to a cash valuation."

Our own Constitution (art. 10, sec. 4), provides that "all property subject to taxation shall be taxed

in proportion to its value," and section 3, *Ibid.*, requires that "taxes shall uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

In State v. Railroad, 77 Mo. 202, the question of duplicate taxation was under consideration and the same conclusion reached as in the Minnesota case, supra.

An examination of the statutes of 1889, relating to the taxation of railroads (art. 8, chap. 138) and bridges (art. 9, *Ibid.*) discloses no legislative intent to lay upon respondents' property a burden of double taxation, even if such doubtful power be conceded to exist; and, therefore, a mandatory instruction in this case might well have been given on the broad ground that the bridge was assessed and taxed for the year 1900 as a part of the railroad, and the taxes sued for once paid in that form.

II.  Again: A close gloss and narrow construction of section 7755 would preclude this bridge, owned by a corporation, from its terms. Its dry letter, pertinent, reads thus: "All bridges over streams in this State, or over streams dividing this State from other States, owned by *joint stock companies,* and all *such* bridges where a toll is charged for crossing the same  .  .  . shall be subject to taxation," etc. A "joint stock company" at common law, was a hybrid midway between a corporation and a partnership; *e. g.,* it had directors and officers, articles of association, a common capital divided into shares; these shares represented the interests of the members, were transferable without the consent of the other members, hence there was no *delectus personae,* and the death of a member did not dissolve the company — but, on the other hand, each member was liable for the debts of the concern, so that such company had characteristics of both a corporation and a partnership. [17 Am. and Eng. Ency.

Law (2 Ed.), 636, 637, *et seq.;* Hunnewell v. Canning Co., 53 Mo. App. 245; Laney v. Fickel, 83 Mo. App. 60.]

However, a corporation is defined by the statutes of 1889, section 2480, as follows: "The term 'corporation,' as used in this chapter, shall be construed to include all joint stock companies or associations having any powers or privileges not possessed by individuals or partnerships," and, construing section 7755 *supra,* this court, in effect, has held that the section included the corporate owner of a bridge used for the purposes enumerated therein. [State ex rel. v. Bridge Co., 109 Mo. 253.] So that the matter, placed in doubt by State ex rel. Tillery v. Railroad, 89 Mo. 98, may be considered at rest.

And this brings us to the deeper question in the case, which is whether, under Revised Statutes 1889, article 8 and article 9, chapter 138, a bridge owned by a railroad company and used as part of its roadbed and tracks, under the plan outlined in this record, should be assessed as a bridge or should be assessed as a part of the railroad itself.

III. Considering the last question stated, it may be said that the status of this identical bridge has been before this court more than once. [State ex rel. v. Bridge Co., supra; State ex rel. v. Bridge Co., 134 Mo. 321.] In the first case the bridge company was the paramount owner of the bridge, it having built the same under a contract with the Louisiana & Missouri River Railroad Company, respondent here. When built, the bridge company leased it to the Chicago & Alton Railroad Company (lessor of the other respondent here), who used it in connection with its lines in Illinois and Missouri. At the trial, *nisi,* it was held that the bridge was a portion of the Chicago & Alton railroad and should have been treated as such for taxation. But this court held that the paramount title remained in the

bridge company and, therefore, the bridge was subject to be taxed as the property of the bridge company. When the case went below, an amended answer was filed setting up with particularity the claim the Louisiana & Missouri River Railroad Company had upon the property, and the cause, being again appealed, is found reported in 134 Mo. 321. It was then held, in effect, that the ownership of the bridge was in the bridge company, and having been left in that condition for corporate reasons hinted at in the opinion, it was held that the railroad company was estopped to defeat the taxation of such bridge in the name of the bridge company, and that the lease of a bridge in perpetuity with a clause of defeasance does not constitute the lessee the owner for the purpose of taxation, and that, on the showing made, the property was taxable as a bridge and not as part of a railroad to which it was leased.

It will be seen, however, that since the decision of that case the status of this property has changed, in that the bridge company has deeded the property to the railroad company, to-wit, the respondent the Louisiana & Missouri River Railroad Company. By that conveyance, in 1895, in our opinion under the facts in judgment, the bridge became an integral part of the railroad and was taxable as such under the provisions of sections 7717 and 7718, Revised Statutes 1889. The case presented to us at this time on the facts is on all-fours with State ex rel. Tillery v. Railroad, 97 Mo. 348, and it would add nothing to the cause of jurisprudence to rediscuss the propositions there expounded and announced — the syllabi of which case are as follows:

"1. Under Revised Statutes 1879, section 6901, a railroad bridge owned by the railroad company and constituting a part of the track, is taxable only as a part of the road and not as a separate structure, notwithstanding it is used in part as a toll bridge for the passage of teams, wagons and the like.

"2. Unless a bridge comes within the bridge act, the State Board of Equalization has no power to assess it under that act."

State ex rel. Tillery v. Railroad was not criticised in any of the cases referred to therein, but, on the other hand, its doctrine met acquiescence. It follows, therefore, that the mandatory instruction can be sustained on the foregoing ground.

Under these views of the case, it will not be necessary to consider other interesting questions raised and briefed by counsel.

The judgment will be affirmed.

*Brace, P. J.,* and *Valliant, J.,* concur; *Graves, J.,* not sitting.