**GTE AUTOMATIC ELECTRIC, GTE Communications Systems, and GTE North, Incorporated, Appellants,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent.**

No. 71539.

Supreme Court of Missouri,
En Banc.

Nov. 14, 1989.

Rehearing Denied Dec. 12, 1989.

Barry V. Cundiff, James C. Swearengen, Paul A. Boudreau, Sondra B. Morgan, Jefferson City, for appellants.

William L. Webster, Atty. Gen., Jay C. Welch, Richard L. Wieler, Asst. Attys. Gen., Jefferson City, for respondent.

ROBERT G. DOWD, Special Judge.

This appeal concerns the Administrative Hearing Commission's denial of an application for use tax refund filed by a telecommunications company. We affirm.

Appellant GTE North, Inc., is a telecommunications company operating in Missouri.[1] In 1983, appellant GTE North purchased telephone switching equipment from appellant GTE Communications Systems. This equipment was purchased to replace existing equipment and to update GTE North's operations by enabling it to provide new and improved options for its customers. Appellants paid a Missouri use tax upon purchase of the equipment, but later GTE North filed an application for refund of the tax claiming the sale of equipment was exempted under the provisions of § 144.615, RSMo 1978. The Director denied the request and both GTE North and GTE Communications appealed to the Administrative Hearing Commission. Appellants claimed they were entitled to an exemption because their telephone services constituted products intended to be sold ultimately for final use or consumption and the equipment was purchased to create a new product or because of product changes. § 144.615(3), RSMo 1978, applying §§ 144.030.2(4) & (5), RSMo 1986.[2]

The Commission held a hearing on the matter and filed findings of fact and conclusions of law. The Commission noted that the exemptions to the use tax in question involved (1) machinery and equipment (2) replacing other machinery and equipment where (3) the replacement is caused by a design or product change. Respondent admitted that the equipment met these three requisites, but denied that it was used for "manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption." Because appellants did not use the equipment to manufacture or fabricate a

tangible product, the Commission held that the exemption did not apply to them.

Appellants also claimed imposition of the use tax was unconstitutional because it amounted to double taxation. The Commission denied this claim as well.

GTE North and GTE Communications now appeal with three points relied on. We first note that upon review we must affirm the decision of the Commission as long as it is supported by the law and competent and substantial evidence on the whole record and is not clearly contrary to the reasonable expectations of the General Assembly. *Wolff Shoe Co: v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). In general, tax statutes must be construed in favor of the taxpayer. *Id.* When interpreting tax exemption statutes, however, we must construe the statutes against those claiming the exemption. *Shell Oil Co. v. Director of Revenue*, 732 S.W.2d 178, 183 (Mo. banc 1987).

Appellants first argue that the Commission erred in finding that the exemptions of subsections 144.030.2(4) and (5), do not apply to the equipment in question. This point concerns the identical provisions in those two subsections that state that they only apply to machinery and equipment used "directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption." Appellants center their point on the term "manufacturing" and attempt to argue that the telephone equipment manufactures a product and thus falls within these exemptions.

While this point certainly bears on the issue at hand, we feel the more pertinent inquiry is whether the output of the equipment is a product or a service. The definition section of the sales tax law construes sales at retail as embracing "[s]ales of *service* to telephone subscribers ... for the transmission of messages and conversations ...," § 144.010.1(8)(c), (emphasis added), and "[s]ales of service for trans-

---

**1.** GTE North is the successor of appellant GTE Automatic Electric.

**2.** All statutory citations are to RSMo 1986 unless otherwise noted.

mission of messages by telegraph companies," § 144.010.1(8)(d). Conversely the law also defines "[s]ales of electricity, electrical current, water and gas ...," but *not* electrical, water, or gas *services.* § 144.010.1(8)(b). These distinctions are reiterated in § 144.020, the statute levying sales tax. Clearly, the legislature has chosen to define the thing sold by telecommunication companies as a service, not as a product. When determining legislative intent, provisions of an entire act should be read together and harmonized if possible. *Community Fed. Sav. & Loan v. Director of Revenue,* 752 S.W.2d 794, 798 (Mo. banc), *cert. denied,* —— U.S. ——, 109 S.Ct. 231, 102 L.Ed.2d 221 (1988). Its limitation of the exemptions in subsections 144.030.-2(4) and (5), to equipment used to manufacture products must be read as specifically excluding equipment used in the telecommunications industry and other industries identified as services. Had the legislature intended the provisions to apply to telecommunications, it could easily have added the words "or services" to the statute.

One of the legislative purposes behind the sales and use tax exemption was to encourage production of items subject to sales tax. *State ex rel. Ozark Lead Co. v. Goldberg,* 610 S.W.2d 954, 957 (Mo.1981). Application of the exemption to telecommunications could fit this goal, but this Court may not read use tax exemptions into the statute unless they clearly and expressly appear therein. *Spudich v. Director of Revenue,* 745 S.W.2d 677, 682 (Mo. banc 1988). Under the clear terms of the statutory scheme, the exemptions in question do not apply to telecommunications and we will not make such an application absent a change in the law.

This conclusion disposes of appellants' first point relied on, but we also note that appellants have failed to demonstrate that telecommunications constitutes manufacturing a product within the meaning of the case law interpreting this phrase. This Court has used two definitions of manufacturing in the past. This Court in *West Lake Quarry & Material Co. v. Schaffner,* 451 S.W.2d 140, 143 (Mo.1970), quoting *City of Louisville v. Howard,* 306 Ky. 687, 208 S.W.2d 522, 527 (1947), described manufacturing as a process that "takes something practically unsuitable for any common use and changes it so as to adopt it to such common use." This Court in *Heidelberg Central, Inc. v. Director of Revenue,* 476 S.W.2d 502, 506 (Mo.1972), discussed the production of new and different articles from raw materials and described the end result of manufacturing as "products for sale which [have] an intrinsic and merchantable value...."

Appellants argue that telecommunications fits into these descriptions because the technology takes a human voice and reconstructs it into a new voice that is "remarkably similar to the customer's input." The process in question takes the analog signals produced by the sending telephone, turns them into digital signals, then restructures the digital signals into analog signals at the receiving telephone which in turn produces sound waves. The telephone signal is the new product made from the raw inputs of human voice and alternating current. Although this argument appears plausible at first glance, careful analysis reveals that it is not valid.

Telecommunications clearly does not fit into the *Heidelberg* definition of manufacturing. That case described the end result of manufacturing as having intrinsic value. The end result here, the telephone signal, has no intrinsic value; it has value only to a specific person at a specific time. The value involved here is the ability to send and receive such signals whenever the customer wishes, and that is a service, not an end result in itself.

In fact, the telecommunication process in question resembles our description of a service as set forth in *K & A Litho Process, Inc. v. Director of Revenue,* 653 S.W.2d 195 (Mo. banc 1983). That case involved a procedure that began with the customer supplying a color transparency to which the plaintiff applied a "highly technical" procedure resulting in a sheet of film and a color key. These two end products were in turn used by a printer to make a plate to print a color photograph based on the original transparency. This Court concluded

that the lithographic process was a service, noting that the color key produced "serves only to convey the transparency colors and having done so is of no further value." *Id. at* 197. Because the end product of the process had little value to anyone but the customer and because the value of that "product" really lay in the service rendered, it was merely an item incidental to the service rendered and not a product in itself. The telephonic signal in question fits this description—it is an incidental result of the communication service. Once the signal has succeeded in conveying a replica of the customer's original message, the signal serves no further purpose and has no further value. The signal cannot be considered a product with intrinsic value for purposes of tax law.

We do not believe the *West Lake* definition of manufacturing applies to telecommunications. That case described manufacturing as involving raw elements that are unsuitable for common use. It is futile to argue that the human voice is unsuitable for common use when that very thing is commonly used every day. This Court has held, however, that the mere fact that raw material can be used does not mean its processing can never be considered manufacturing. In *Jackson Excavating Co. v. Administrative Hearing Comm'n,* 646 S.W.2d 48 (Mo.1983), this Court applied the exemptions of §§ 144.030.2(4) & (5), to the process of purifying raw water into drinking water despite the fact that the raw water could be used for irrigation purposes. That case differs from the present case in two important respects. First, in *Jackson* the *Heidelberg* definition clearly applied to the process, as it does not here. *Id.* at 51. Second, the common use of the raw material in *Jackson* was very limited and significantly different from its processed uses. In the case at bar, the common use of human speech is much broader than that of the telephone signal and the

basic use, communication, does not change. Consequently, telecommunications does not fit either definition of manufacturing used by this Court [3] but instead fits our description of a service.

Appellants' second point claims that by denying them use of the subsection 144.-030.2(4) and (5), exemptions, the Commission violated article X, section 3 of the Missouri Constitution, which mandates uniform taxation. That section provides that taxes "shall be uniform upon the same class or subclass of subjects." Appellants argue that the Commission's decision creates "an artificial and unwarranted class of traditional manufacturers."

The State has broad powers in establishing the different classes of taxpayers, and one reasonable basis for distinguishing classes is source of income. *Mid–America Television Co. v. State Tax Comm'n,* 652 S.W.2d 674, 680 (Mo. banc 1983), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1413, 79 L.Ed.2d 740 (1984). This basis supports the Commission's decision. Appellants derived their income from providing a service, which is a different source than that from which manufacturers of a product derive their income. Thus, it does not violate the principle of uniform taxation to treat appellant GTE North differently from manufacturers of products.

Appellants' final point argues that the Commission erred in holding that application of the use tax to the equipment does not result in double taxation. Because GTE North is a rate-regulated telephone company, the costs for its service must be broken down and presented to the Public Service Commission. The service charges are determined by allowing a percentage of profit above the costs. The use tax on the equipment is one such cost of service factored into the allowed service charge. The customer is charged a sales tax upon

---

**3.** Appellants' first point relied on specifically attacked the Commission's finding that application of the exemptions requires manufacture of a tangible product. We need not address this contention since we have determined that telecommunications is a service, not a product, and that it does not constitute manufacturing. It is

interesting to note, however, that appellants have failed to identify any equipment producing intangible products to which the exemptions have been applied. While we hesitate to say the exemptions will never apply to any intangible product, we find such an application unlikely at best.

the total service charge. Appellants argue that because the customers are charged for the use tax on the equipment and then taxed on that charge, there is double taxation.

■ Double taxation occurs when two separate taxes are placed on the same item for the same purpose by the same taxing authority during the same taxing period. *State ex rel. Spink v. Kemp*, 365 Mo. 368, 283 S.W.2d 502, 518 (banc 1955). While double taxation is not unconstitutional, the courts will not impose such a burden absent a clearly expressed legislative intent. *General American Life Insurance Co. v. Bates*, 363 Mo. 143, 249 S.W.2d 458, 466 (banc 1952).

■ That is clearly not the case here. GTE North pays the use tax on the equipment. The telephone customer pays the sales tax on the service it receives. The tax is placed on two separate items by two separate statutes. The mere fact that GTE North is recovering the cost of the use tax in its service charge does not mean that the customer is paying a double tax burden. Every successful business must factor taxes, both on existing equipment and on purchases, into the rate it charges for its goods or services. The fact that a different tax is imposed upon sale of the final item to a customer does not result in double taxation, and appellants have not presented any authority that such an imposition of tax is double taxation.

Appellants argue that the case at bar is logically identical to *State ex rel. Pearson v. Louisiana M. R.R. Co.*, 196 Mo. 523, 94 S.W. 279 (1906). In that case the State taxed a railroad bridge both as part of the company's roadbed and as an independent superstructure. This Court found that constituted double taxation. *Id.*, 94 S.W. at 282. The present case is clearly not comparable. To draw a parallel, the case would have to have involved a tax paid on the bridge and the sales tax paid upon the railroad passenger tickets or transportation charges. The two taxes in fact involved in that case were both applied directly on the same item and directly on the same taxpayer—the railroad.

Appellants have failed to demonstrate that double taxation exists in this case.

The decision of the Commission is affirmed.

BLACKMAR, C.J., and RENDLEN and HIGGINS, JJ., concur.

ROBERTSON, J., dissents in separate opinion filed.

COVINGTON and BILLINGS, JJ., dissent and concur in dissenting opinion of ROBERTSON, J.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.

ROBERTSON, Judge, dissenting.

I must respectfully dissent. The Court's opinion describes the critical inquiry in this case as "whether the output of the equipment is a product or a service", and determines that "the legislature has chosen to define the thing sold as a service, not a product." On this basis the Court reasons that the signal generated by the taxpayer's switching equipment is not a "thing" and therefore is not a product; if it is not a product, the Court concludes, it is not manufactured.

In this conclusion the Court is mistaken. The error is a product of the Court's assumption that "product" as used in Section 144.030.2(4), RSMo 1986, is synonymous with "tangible personal property" as used in Section 144.010(8), RSMo 1986.

Section 144.010(8) defines a "sale at retail" generally as "any transfer made ... of the ownership of ... tangible personal property, for a valuable consideration...." Precisely because the service a telephone customer receives through his equipment is not tangible personal property, Section 144.010.1(8)(c), RSMo 1986, expressly defines that service as a sale at retail. Telephone service is, therefore, taxable service. A tax is imposed on sellers "for the privilege ... of selling tangible personal property or rendering taxable service...." Section 144.020.1, RSMo 1986. These sections determine those activities upon which the

sales/use tax is imposed; they do not speak to the exemption available for manufacturing equipment.

Equipment "purchased for and used directly for manufacturing or fabricating a product which is intended to be sold for final use or consumption" is exempt from sales and use taxation. Section 144.030.-2(4), RSMo 1986. In a manner notably contrary to the section defining "sale at retail", Section 144.030.2(4) does not require that the thing manufactured or fabricated be tangible personal property to qualify for the exemption. The Administrative Hearing Commission properly found that the digital switching apparatus in this case is equipment, "replacing and used for the same purposes as the machinery and equipment replaced by reason of design or product changes ..." and that Section 144.030.-2(4) would be applicable if a product were manufactured.

Cases of this Court have long focused on the word "manufacture" to determine whether the device at issue met the requirements for the exemption. Those cases did not require the Court to determine the meaning of "product"; the equipment under scrutiny clearly produced tangible personal property. Thus, in *West Lake Quarry & Material Co. v. Schaffner*, 451 S.W.2d 140, 143 (Mo.1970), the Court found that the process of grinding and crushing rock into gravel was manufacturing. Manufacturing as defined there "takes something practically unsuitable for any common use and changes it so as to adopt it to such common use." *Id.* In *Heidelberg Central, Inc. v. Director of Revenue*, 476 S.W.2d 502, 506 (Mo.1972), a case involving the printing of paper products, the Court described the end result of manufacturing as the production of "new and different articles from raw materials by the use of machinery, labor and skill ... which [have] an intrinsic and merchantable value, and were in forms suitable for new uses."

Here, for the first time, we are asked to consider the meaning of the word "product" within the exemption statute. The specific inquiry is whether an intangible "thing" can be a product. Both the Administrative Hearing Commission and the Court find themselves caught in the web of the senses. For the majority, a product is a product only if it can be seen and touched. Perhaps this explains the Court's assumption that "tangible personal property" and "product" are synonymous. But they are not.

Property is tangible if its existence can be verified by the senses. A product, however, is a product even if not tangible. It is "something produced by physical labor or by intellectual effort: the result of work or thought." Webster's Third New International Dictionary, 1810 (1976). In defining "product", the dictionary directs us to "produce". There we find: "to make economically valuable: make or create so as to be available for satisfaction of human wants." Id.

The pertinent question is not whether the digital signal produced by the GT–5 is a service or tangible personal property. The juxtaposition between service and tangible personal property invoked by the Court is, as has been said, not relevant to the question before us. Instead, the pertinent question is whether the GT–5 manufactures a "product which is intended to be sold ultimately for [taxable] final use or consumption."

Even though the service provided the telephone customer is statutorily determined a service and is, therefore, subject to sales tax, it does not necessarily follow that the electronic impulses that adapt human voices for transmission to the telephone equipment of telephone customers are not products sold for final use. The fact that the process begins and ends with the human voice (or the "talk" of computers) does not change the fact that the device producing the digital signal causes "a substantial transformation in quality and adaptability and creates an end product quite different from the original." *Jackson Excavating Co. v. Administrative Hearing Commission*, 646 S.W.2d 48, 51 (Mo.1983).

To assume that these digital signals have no final use is to misunderstand the ubiqui-

tous importance of telephonic communications in the modern world. These electronic impulses have intrinsic and merchantable value and are the product of the transformation of a raw product—the human voice or the binary language of the computer—into forms suitable for new uses. They make computer networking, facsimile transmission and widespread business empires possible; they are vital to the smallest enterprise; these unseen oscillations stand ready to summon aid during the dark terror of an emergency; they are essential in ways too numerous to mention, too valuable to discount.

The Court tells us that the telephonic signal "is an incidental result of the communication service." (Op. at 52). To the contrary, it is the product of the switching device, whether analog or digital, by which telephonic service is possible and without which a modern communication system is not possible.

In the last twenty years, we have entered an age in which value is produced by all sorts of manifestations not readily perceived by unaided senses. "The naive prejudice that physical objects are somehow more 'real' than ideal objects remains one of the most deeply rooted in Western culture.... A consequence of this belief—which until recently was not even perceived as such—is that our logic is patterned exclusively on the structure of physical objects." G. Rota, J. Schwartz & M. Kac, Discrete Thoughts: Essays on Mathematics, Science, and Philosophy (1986) quoted in G. Gilder, Microcosm: The Quantum Revolution in Economics and Technology 21 (1989).

In recognition of our descent into the microcosm of physics and binary language, and the value added there by the application of intellectual efforts, an understanding of "product" more broad than that permitted by our senses is required. The General Assembly, with uncharacteristic prescience, used "product" precisely because it is more broad than "tangible personal property". The legislature apparently realized that where a device is able to make something new and economically valuable from the virtually invisible, a product is manufactured and the exemption provided under Section 144.030.2(4) is available.

Because the digital signal produced by the GT–5, though not tangible personal property, is nonetheless a product, I would reverse the decision of the Administrative Hearing Commission and permit the exemption sought by the taxpayer.