**INTERNATIONAL BUSINESS MACHINES CORPORATION, Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

No. 79681.

Supreme Court of Missouri,
En Banc.

Dec. 23, 1997.

Rehearing Denied Jan. 27, 1998.

Laurence R. Tucker, Stuart K. Shaw, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Respondent.

BENTON, Chief Justice.

In 1990, 1991 and 1992, International Business Machines Corporation sold mainframe computers, document scanners, direct storage devices, tape drives and printers to DST Systems, Inc., for $21,456,387.56. IBM remitted sales tax on these items to the Director of Revenue, but later claimed a refund of $1,388,870.38 based on the exemption in section 144.030.2(5) RSMo Supp.1990.[1] The Director and the Administrative Hearing Commission denied the refund. IBM appeals. *Mo. Const. art. V, sec. 3.* Affirmed.

## I.

DST designs and operates software in order to process information for the mutual fund, insurance, securities transfer, pharmaceutical, banking and real estate industries (though most of DST's customers are mutual funds, or mutual fund service companies). Specifically, DST receives financial data by telephone, satellite, facsimile, mail and various electronic means. DST performs transactions with the information, which include the buying and selling of mutual fund shares, purchasing securities from mutual funds, valuing portfolios for mutual funds, pricing mutual funds, and updating shareholder records, on a daily basis. DST thus manipulates the data to create forms of output such as balance, control and exception reports, super sheets (reports of daily activity for each fund), ad hoc reports and statements, account confirmation statements, dividend and redemption checks, tax information forms, and net asset values. The output information is (mostly) transmitted to mutual fund companies, shareholders, and the public me-

---

1. All statutory references are to RSMo 1990 unless otherwise noted.

dia (as appropriate). It reaches the customer by various means including hard copy, electronic transmission, optical storage, tape storage, microfiche/film, direct access storage, and downloading to personal computers.

## II.

■ In order for IBM to receive a refund, DST's use of the machinery and equipment must meet the requirements of section 144.030.2(5), which exempts from sales tax:

Machinery and equipment ... purchased and used ... to expand existing manufacturing ... plants in the state if such machinery and equipment is used directly in manufacturing ... a product which is intended to be sold ultimately for final use or consumption

In determining the meaning of a statute, the starting point is the plain language of the statute itself. *L & R Egg Co. v. Director of Revenue*, 796 S.W.2d 624, 625 (Mo. banc 1990).

■ The Director concedes that DST used the machinery and equipment to expand an existing plant. On the next relevant element of the statute—contrary to the position of the Director and the concurring opinion—it is "established that organizing information through computer technology is 'manufacturing.'" *Concord Publishing House, Inc. v. Director of Revenue*, 916 S.W.2d 186, 191 (Mo. banc 1996). The remaining issue is whether DST makes a "product which is intended to be sold ultimately for final use and consumption."

■ The term "product" has been defined in recent cases as "an output with a market value." *Mid–America Dairymen, Inc. v. Director of Revenue*, 924 S.W.2d 280, 283 (Mo. banc 1996); *see also McKinley Iron, Inc. v. Director of Revenue*, 888 S.W.2d 705, 707 (Mo. banc 1994). These recent cases call into question the discussion in *GTE Automatic Electric v. Director of Revenue*, 780 S.W.2d 49, 50–52 (Mo. banc 1989), which was princi-

pally relied on by the Administrative Hearing Commission in this case. There this Court stated that the term "product" does not include outputs defined as a "service." *Id.* at 51. However, as the dissent there noted—and the recent cases say—the sales tax law does not limit the term "product" to tangible personal property. *Id.* at 54 (citing *Webster's Third International Dictionary, 1810* (1976)). Because a product is an output with a market value, it can be either tangible personal property or a service. To the extent inconsistent with this opinion and the recent cases, *GTE's* discussion of the term "product" should no longer be followed. 780 S.W.2d at 50–52[3].[2]

Section 144.030.2(5), however, does not exempt sales of machinery and equipment used directly to manufacture *any* product. The statute does not end with the word "product." Rather, section 144.030.2(5) exempts sales of machinery and equipment used directly to manufacture a product "which is intended to be sold ultimately for final use or consumption."

■ The term "sold" has a statutory definition to which this Court must give effect. *Jones v. Director of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992). "Sold" is a verb form of the noun "sale." "Sale" means

any transfer, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for valuable consideration and the rendering, furnishing or selling for a valuable consideration any of the substances, things and services herein designated and defined as taxable under the terms of sections 144.010 to 144.510

"Sale" thus includes both selling tangible personal property and rendering taxable services. By the use of the term "sold" in section 144.030.2(5), the General Assembly intended that exemption to apply to machinery and equipment that generate sales of

---

2. The concurring opinion asserts that the General Assembly adopted the "settled judicial construction" of *GTE* in later reenactments of section 144.030.2(5). In fact, only nine months after *GTE*, and before any legislative reenactment, this Court held, contrary to *GTE*: "The statute [144.030.2(5)] contains no explicit requirement that the product be 'tangible' in order for the manufacturing exemption to apply." *Bridge Data Co. v. Director of Revenue*, 794 S.W.2d 204, 206 (Mo. banc 1990).

tangible personal property or taxable services.

### III.

■ Section 144.030.2(5) implements the general purpose of the sales tax law, made explicit in section 144.021 RSMo 1986:

> The purpose and intent of sections 144.010 to 144.510 is to impose a tax upon the privilege of engaging in the business, in this state, of selling tangible personal property and those services listed in section 144.020.

The exemption in section 144.030.2(5) encourages the development of enterprises that produce products that are within the scope of the sales tax law. *West Lake Quarry & Material Co. v. Schaffner*, 451 S.W.2d 140, 142 (Mo.1970).

IBM argues that the purpose of the statute is to encourage economic development, whether or not there is a "sale." IBM, however, effectively ends its analysis of section 144.030.2(5) at the word "product" and ignores the rest of the statute, which requires that the product be "sold" within the statutory definition of that term.

IBM particularly relies on *Bridge Data v. Director of Revenue*, which states: "It is said that the manufacturing exemption exists to encourage the economic development of the state." 794 S.W.2d 204, 206 (Mo. banc 1990). For support, *Bridge Data* cites to *Heidelberg Central*, which in fact exaggerates to the contrary:

> One purpose of the statute clearly was to promote manufacturing business in the State of Missouri by exempting manufacturers from sales taxes on the equipment which they purchased; this was done, presumably, in view of the fact that sales taxes would be paid on *all* of their finished products when sold.

*Heidelberg Central Inc., v. Director of Dept. of Revenue*, 476 S.W.2d 502, 506 (Mo.1972) (emphasis added).

*Bridge Data* also cites *State ex rel. Ozark Lead Co. v. Goldberg*, 610 S.W.2d 954, 957 (Mo.1981), which states: "An equally important object of such [manufacturing] exemption is the furtherance of industrial development in the state, regardless of whether the products involved might become subject to the Missouri sales tax." As shown in section II above, the issue is whether the ultimate aim is a "sale." Thus, the overall purpose of the sales tax law is implemented in section 144.030.2(5), to encourage the sale of machinery and equipment that have the aim or end ultimately to generate a sale within the meaning of the sales tax laws.

### IV.

■ The decisive point then is whether DST's products are "sold." Selling computer printouts or computer output is defined by statute *not* to be "the sale of tangible personal property." *Sec. 144.010.8(ii)*. Further, selling computer printouts or computer output is not one of the services listed as taxable in the sales tax laws. *Sec. 144.010(8); 144.020 RSMo 1986*. Therefore, the exemption in section 144.030.2(5) is not available for machinery and equipment used to manufacture computer printouts, and computer output on microfiche or microfilm—which include several of DST's products.

■ DST's outputs are also transmitted to customers on various storage devices such as optical and tape storage. There is no evidence in the record that DST transfers to customers the title to these storage devices, which is required for a "sale." *See Dean Machinery*, 918 S.W.2d at 246. Nor is there evidence that the storage devices are the "true object" or "true essence" of the transaction. *See Sneary v. Director of Revenue*, 865 S.W.2d 342, 345 (Mo. banc 1993); *IBM Corp. v. Director of Revenue*, 765 S.W.2d 611, 613–14, (Mo. banc 1989); *James v. Tres Computer Systems, Inc.*, 642 S.W.2d 347, 349 (Mo. banc 1982).

■ DST's outputs are also transmitted to customers electronically. A "sale" requires transferring tangible personal property or rendering a taxable service. *Sec. 144.010.1(7); sec. 144.010(8); sec. 144.020.1 RSMo 1986*. DST's electronic transmission of information does not qualify as a "sale."

■ None of DST's products are intended ultimately to be "sold." Thus, the exemption in section 144.030.2(5) does not apply to

DST's purchase of machinery and equipment from IBM.

## V.

 IBM argues that DST's outputs "squarely" resemble Bridge Data's, which were held to justify the exemption. *See Bridge Data*, 794 S.W.2d at 206. The *Bridge Data* opinion, however, has little analysis of the statutory language, and no analysis of the critical phrase "product which is intended to be sold. . . ." In fact, *Bridge Data* is founded on the premise that this Court's function is to update the sales tax laws:

> The recognition of the manufacturing exemption represents a reasonable adoption of the statutes to processes which were not known or hardly known, at the time they were enacted.

*Bridge Data*, 794 S.W.2d at 206. To the contrary, sales tax is purely a matter of statute and within the power of the legislature, subject to constitutional limits. *City of St. Louis v. Carroll*, 494 S.W.2d 1, 4 (Mo. 1973). This Court has no authority to amend the sales tax laws in order to update them. To the extent inconsistent with this opinion, *Bridge Data* should no longer be followed. 794 S.W.2d at 205–06[1].

## VI.

The decision of the Administrative Hearing Commission is affirmed.

PRICE, LIMBAUGH, ROBERTSON, WHITE and HOLSTEIN, JJ., concur.

JAMES R. DOWD, Special Judge, concurs in separate opinion filed.

COVINGTON, J., not sitting.

JAMES R. DOWD, Special Judge, concurring in result.

I agree with the majority's decision that IBM and DST are not entitled to the sales tax exemption contained in section 144.030.2(5). I respectfully disagree with the majority's expansion of the definition of the term "product" as used in section 144.030.2(5). I further disagree with the implication that passage of title is determina- tive of whether or not a sale of the optical and tape storage devices at issue here has occurred.

## I.

Today this Court exempts manufacturers of machinery and equipment from the sales tax statute if the purchaser uses the machinery or equipment to render services. This interpretation is contrary to the tax policy formulated by the legislature as "[i]t is firmly engrained that taxation is the rule and exemption therefrom the exception and such claims are not favored in the law." *Missouri Church of Scientology v. State Tax Comm'n*, 560 S.W.2d 837, 844 (Mo. banc 1977) (internal citation omitted). The majority correctly acknowledges its role in the interpretation of the sales tax statute: "[S]ales tax is purely a matter of statute and within the power of the legislature, subject to constitutional limits. This Court has no authority to amend the sales tax laws in order to update them." Sec. V, *supra* (internal citations omitted). Section II of the principal opinion, however, contravenes this well-recognized principle by broadening the definition of the term "product" to include services within the scope of the sales tax exemption.

I disagree with the majority because the General Assembly has never expressed an intent to classify services as products even though it has exposed some specific services to sales tax. In *GTE Automatic Electric v. Director of Revenue*, this Court concluded that services were not products. 780 S.W.2d 49, 51 (Mo. banc 1989). Since *GTE* was decided in 1989, the General Assembly has amended section 144.030 on several occasions without altering the language of section 144.030.2(5).[1] I believe the legislature's decision to reenact section 144.030.2(5) unchanged indicates its acceptance of *GTE's* interpretation that services are not products. As stated by this Court long ago, "where the Legislature, after a statute has received a settled judicial construction, reenacts or carries forward without change, or reincorporates the exact language theretofore construed, it is to be presumed that it knew of and adopted the judicial construction previ-

---

1. *See* Laws 1991, p. 509; Laws 1994, p. 466; Laws 1995, p. 411; Laws 1996, p. 304.

ously given to the statute." *Roy F. Stamm Electric Co. v. Hamilton–Brown Shoe Co.*, 350 Mo. 1178, 171 S.W.2d 580, 583 (1943).

The majority cites *Mid–America Dairymen, Inc. v. Director of Revenue*, 924 S.W.2d 280 (Mo. banc 1996), and *McKinley Iron, Inc. v. Director of Revenue*, 888 S.W.2d 705 (Mo. banc 1994), as providing the foundation for its decision to broaden the definition of the term "product." Significantly, neither of the holdings of these cases required an interpretation of section 144.030.2(5), and the taxpayers in these cases were not seeking sales tax exemptions for services. In fact, a fair reading of *Mid–America Dairy* indicates that the Court equated tangible goods with products: "It is sufficient if the product, although marketable, is used instead by the same manufacturer or processor as an *ingredient or base* for yet another product." *Mid–America Dairymen*, 924 S.W.2d at 283 (emphasis added). In my view, these cases do not justify such a departure from existing law.

More importantly, the plain language of the statute precludes such a sweeping interpretation. The statute exempts from sales tax

[m]achinery and equipment, and the materials and supplies solely required for the installation or construction of such machinery and equipment, purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants in the state if such machinery and equipment is used directly in *manufacturing, mining or fabricating a product* which is intended to be sold ultimately for final use or consumption.

Sec. 144.030.2(5), RSMo 1994 (emphasis added). According to the statute, a product is the result of "manufacturing, mining or fabricating." It is clear that a service is not the product of mining or fabricating as the principal opinion omits that language and focuses solely on manufacturing. The question that remains, therefore, is whether or not a service can be manufactured. Manufacturing is defined as "to make into a product suitable for use" or "to make from raw materials by hand or by machinery." Webster's Third International Dictionary 1378 (1976). Clear-

ly a service does not reasonably fit within any of these definitions.

In addition, the majority's expanded definition of the term "product" conflicts with the purpose of the sales tax statute. The General Assembly exempted certain equipment from the sales tax statute because this equipment ultimately would trigger a sale at retail when it was used to manufacture products "sold ultimately for final use or consumption." Missouri sales tax focuses on the retail level. *See Dean Machinery Co. v. Director of Revenue*, 918 S.W.2d 244, 245–46 (Mo. banc 1996). The majority claims that the purpose of section 144.030.2(5) is to "encourage[ ] the development of enterprises that produce products that are *within* the scope of the sales tax law," sec. III, *supra* (emphasis added), however, creating an exemption for services as the majority desires will not fulfill this goal. To the contrary, as a result of this opinion, the sale of machinery and equipment will no longer be subject to sales tax even though the machinery and equipment may not generate a taxable product.

To interpret this language as intending services to constitute products misinterprets the statute's plain meaning and directly contravenes the clear intent of the General Assembly. I believe that we should adhere to the limited role in construing statutes expressed by this Court in *Conagra Poultry Co. v. Director of Revenue:* "This Court should not construe a legislative intent to allow a sales tax exemption ... without clear statutory language to that effect." 862 S.W.2d 915, 917 (Mo. banc 1993).

## II.

I agree with the majority's assessment that IBM is not entitled to the sales tax exemption by virtue of DST's computer printouts and computer output on microfiche or microfilm. However, the majority seems to carve out an exception to section 144.030.2(5) for DST's transmissions on various storage devices. The majority implies that had DST simply transferred title to these devices to its customers, a "sale" would have occurred that would exempt from sales tax the machinery and equipment used to

encrypt the information on these devices and transmit it to the customer. I do not agree with this analysis. Section 144.010.1(8)(ii) RSMo 1994 states that:

> [T]he selling of computer printouts, computer output or microfilm or microfiche and computer assisted photo compositions to a purchaser to enable the purchaser to obtain for his own use the desired information contained in such computer printouts, computer output on microfilm or microfiche and computer assisted photo compositions shall be considered as the sale of a service and not as the sale of tangible personal property.

I do not understand how the majority can distinguish computer output on microfiche or microfilm from computer output stored on optical or tape media. Storage on optical or tape media is simply the modern equivalent of microfilm or microfiche. Optical and tape media is the successor to the type of information storage and transmission originally envisioned by the General Assembly. According to the existing interpretation of section 144.030.2(5), DST's transmission of information on optical or tape media would not entitle IBM to an exemption from the sales tax statute whether title passes or not. This is so because section 144.010.1(8)(ii) specifically classifies such a transmission as the sale of a service, and under present law a service is not a product. However, now that the majority classifies transmissions of this type as products, IBM may claim the exemption simply upon "passage of title."