**BRIDGE DATA COMPANY, Appellant,**

v.

**DIRECTOR OF REVENUE,**
**Respondent.**

No. 72067.

Supreme Court of Missouri,
En Banc.

July 31, 1990.

Juan D. Keller, Brenda L. Talent, Brian C. Sparks, St. Louis, Mo., for appellant.

William L. Webster, Atty. Gen., Richard L. Wieler, James B. Deutsch, Asst. Attys. Gen., Jefferson City, Mo., for respondent.

BLACKMAR, Chief Justice.

This is another case requiring the application of a statutory framework that first took shape in the thirties and forties to the technology of the eighties and nineties. We have dealt with similar problems in *James v. Tres Computer Service, Inc.*, 642 S.W.2d 347 (Mo. banc 1982); *International Business Machines v. Director of Revenue*, 765 S.W.2d 611 (Mo. banc 1989); and *GTE Automatic Electric Co. v. Director of Revenue*, 780 S.W.2d 49 (Mo. banc 1989), with varying results and, sometimes, with sharp divisions. The legislature might help by modernizing the statutes. Until it does, we must work with imperfect molds. Without prejudging the case, we will refer to the appellant as "the taxpayer" for convenience.

The taxpayer is in the business of supplying sophisticated information about securities traded on the public markets, principally to institutional investors. Its tax advisers were of the opinion that its transactions were not subject to Missouri sales or use tax, and so it neither filed returns nor asked the revenue authorities for rulings about the sales and purchases later drawn into question. The Director of Revenue conducted an audit and assessed deficiencies and penalties. The taxpayer sought review before the Administrative Hearing Commission, which sustained portions of the assessment while rejecting others. The taxpayer filed a petition for review in this Court and the director did not. We affirm the decision in part and reverse in part.

## 1. *The Manufacturing Exemption*

The taxpayer, during the period covered by the assessment, obtained raw financial data by telephonic and direct satellite transmissions, and by mail. These data were keypunched into the taxpayer's computer system, which consisted of a substantial array of hardware. The taxpayer also placed its own equipment on the premises of each of its customers, so that they could call up the information they wanted, either on a screen or in a printout.

The taxpayer contended that the hardware described above was exempt from Missouri sales and use taxes pursuant to § 144.030.2, RSMo 1986, reading in pertinent part as follows:

\* \* \* \* \* \*

(4) Machinery and equipment, and the materials and supplies solely required for the installation or construction of such machinery and equipment, replacing and used for the same purposes as the machinery and equipment replaced by reason of design or product changes, which is purchased for and used directly for manufacturing or fabricating a product which is intended to be sold ultimately for final use or consumption;

(5) Machinery and equipment, and the materials and supplies solely required for the installation or construction of such machinery and equipment, purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants in the state if such machinery and equipment is used directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption;

\* \* \* \* \* \*

It argues that, in making information available to its customers, it is engaged in "manufacturing or fabricating a product" within the meaning of those statutory provisions. It cites cases such as *Heidelberg Central, Inc. v. Director of Revenue*, 476 S.W.2d 502 (Mo.1972), holding that the printing of stationery and forms constitutes manufacturing, and *West Lake Quarry & Material Co. v. Schaffner*, 451

S.W.2d 140 (Mo.1970), finding that grinding of rock into gravel is manufacturing. *See also, Jackson Excavating Co. v. Administrative Hearing Commission,* 646 S.W.2d 48 (Mo.1983), holding that the purification of water to render it fit to drink is manufacturing.

The director does not contend that the equipment purchases were not used for replacement or expansion purposes, as required by the statutes. He argues, however, that the taxpayer provides a "service" rather than a product. It relies strongly on *GTE Automatic Electric Co. v. Director of Revenue,* 780 S.W.2d 49 (Mo. banc 1989), holding that a telecommunications company, in enabling users to project their voices through its system, did not produce a product within the compass of the statutory exemptions. In that sharply divided opinion we gave weight to statutory provisions that distinguished between the furnishing of water, gas and electricity, which were recognized as products, and telephone services, which were not expressly mentioned. That distinction is not helpful in resolving the case before us.

We conclude that the manufacturing exemption should be allowed for the taxpayer's hardware used in collecting financial data and transmitting data to its customers. Here, what comes out of the system is clearly different from what went into it, in contrast to *GTE,* in which the telephone company purported to transmit, as accurately as possible, the voices of the participants, even though what one learned in theoretical physics might demonstrate that what came out was not really the same as what went in. *See* dissenting opinion of Robertson, J., 780 S.W.2d at 53. The statute contains no explicit requirement that the product be "tangible" in order for the manufacturing exemption to apply. The taxpayer makes use of complicated and expensive equipment in providing data to its customers. The recognition of the manufacturing exemption represents a reasonable adoption of the statutes to processes which were not known or hardly known, at the time they were enacted.

It is said that the manufacturing exemption exists to encourage the economic development of the state.[1] The exemption serves to lessen the burden inherent in the purchase of new and replacement equipment. Our holding gives effect to this purpose.

Because of our conclusion as above stated we do not have to reach a decision about the effect of a waiver of the statute of limitations executed by the taxpayer on account of sales tax claims against Bridge Electronics Corporation, which was the seller of some of the purchased equipment and which was later merged into the taxpayer. Nor do we have to reach a decision on the effect of that merger on sales tax liability of a corporation which was not the surviving corporation, although it seems obvious that a corporate merger does not terminate any liability of any component corporation.

## 2. *The Taxpayer's Software Purchases*

■ A distinct segment of the case has to do with the purchase by the taxpayer of computer software for use in its own system. The director claimed that such purchases were subject to Missouri sales or use tax. The Administrative Hearing Commission disagreed as to software delivered by telephone, and by magnetic tape which the taxpayer was obliged to return to the supplier after using it to program its system. It sustained the assessment as to software delivered on magnetic tapes, floppy disks, or punchcards which the taxpayer retained and which the commission found to consist of programs which were "canned" rather than "custom," in that they were held for sale to those who might desire them and were not specially created to meet a particular customer's specifications or requirements.

We believe that the Commission's finding on this portion of the case is supported by substantial evidence on the record as a whole, and sustain its decision. The tax-

---

**1.** *Heidelberg Central, Inc. v. Director of Revenue,* 476 S.W.2d 502 (Mo.1972); *State ex rel. Ozark* *Lead Co. v. Goldberg,* 610 S.W.2d 954 (Mo.1981).

payer cites *James v. Tres Computer Service, Inc.,* 642 S.W.2d 347 (Mo. banc 1982); and *K & A Litho Process v. Director of Revenue,* 653 S.W.2d 195 (Mo. banc 1983), which involved custom creations on media of relatively small value. There the Court concluded that the media of transmission, magnetic tape in the former case and color film transparencies in the latter, were of relatively small value and were incidental to the primary purpose of the transaction. These holdings were refined in *International Business Machines v. Director of Revenue,* 765 S.W.2d 611 (Mo. banc 1989), in which the seller-taxpayer had a stock of computer programs on disk, diskette, tape, and punched cards. The Court held that the sale of these programs was a sale of tangible personal property, even though the programs were sometimes subjected to minor modifications to meet the particular purchaser's needs, and even though the purchaser was instructed to make copies so as to provide a backup but to return the original to the seller after loading it into its computers.

■ The director has promulgated regulations on the basis of the distinction between *Tres* and *IBM.* We are troubled by the Administrative Hearing Commission's apparent assumption that these regulations have the force and effect of law which it is powerless to depart from. Taxes may be authorized only by statute, and the director may not add to, subtract from, or modify the revenue statutes by regulation.[2] The Commission's citation of *State Tax Commission v. Administrative Hearing Commission,* 641 S.W.2d 69 (Mo. banc 1982), is utterly misplaced. That case held simply that the legislature could not give the Commission the authority to render a declaratory judgment as to the validity of rules of the State Tax Commission. When review of decisions of the Director of Revenue is sought the Commission must resort to the statutes and has full authority to reach a decision on the law as it finds it, subject, of course, to judicial review.

The Commission, however, has found explicitly that the programs as to which it sustained the assessment were not custom programs but rather stock items, so that *IBM* rather than *Tres* was the governing authority. This finding is supported by sound law and substantial evidence, and we sustain it.

The taxpayer argues that the blank magnetic tapes and floppy disks have only minimal value, and that the purchaser is interested in the programs rather than the disks and tapes, which may be discarded after their initial use. Under *IBM* this circumstance is not controlling. In *Hearst Corp. v. Director of Revenue,* 779 S.W.2d 557 (Mo. banc 1989), we held that the director's position that the sale of a newspaper was not a sale of tangible personal property, because the newsprint was simply a means of transmitting information, was legally unsound. The commission properly found that the challenged items were acquired through sales of tangible personal property, and so were subject to sales and use tax.

### 3. *Statute of Limitations*

■ The taxpayer asserts that that portion of the assessment relating to transactions between January 1, 1981 and December 31, 1985 is barred by the statute of limitations, § 144.220, RSMo 1986, reading as follows:

> Except in the case of a fraudulent return, or neglect or refusal to make a return, every notice of additional amount proposed to be assessed hereunder shall be mailed to the person within three years after the return was filed or was required to be filed. The provisions of this section shall apply to returns filed or required to be filed after December 31, 1981.

The director responds that the bar of the statute does not apply, by reason of the taxpayer's "neglect ... to make a return." The taxpayer asserts that this exception cannot apply because the uncontradicted

---

2. *Hearst Corp. v. Director of Revenue,* 779 S.W.2d 557 (Mo. banc 1989); *State ex rel. Neese v. IGF Insurance Co.,* 706 S.W.2d 856 (Mo. banc 1986); *Norwin G. Heimos Greenouse, Inc. v. Director of Revenue,* 724 S.W.2d 505 (Mo. banc 1987).

evidence shows that it believed in good faith that no sales or use taxes were owing on the transactions covered by the deficiency assessment. It properly cites *Odorite of America v. Department of Revenue,* 713 S.W.2d 833 (Mo. banc 1986) and *Lora v. Director of Revenue,* 618 S.W.2d 630 (Mo. 1981), to the effect that mere failure to file a return is not the same as "neglect," and that the director must show negligent or careless failure to file a return.

Those cases, however, are distinguishable. In *Odorite* the taxpayer had made its business methods known to the revenue authorities, but had sought recognition as a manufacturer. In *Lora,* the taxpayer pointed to the director's long-standing practice of not claiming sales taxes from proprietors of miniature golf courses, which was changed only after our decision in *Blue Springs Bowl v. Spradling,* 551 S.W.2d 596 (Mo. banc 1977). Here there were purchases of tangible personal property, at least insofar as the tapes and floppy disks were concerned. Whether the value added by the processing of the program onto the medium was subject to tax had not been the subject of a definitive ruling. Other transactions were called into question involving sales by the taxpayer to others, in which the director assessed a deficiency which the commission sustained and which the taxpayer does not challenge in its brief. Under these circumstances the taxpayer could properly be expected to disclose its transactions in some manner, so that the director may audit them and review their legal status. There is a distinct threat to the revenue if the statute of limitations is running on transactions the director has no means of knowing about. The record is not replete with evidence about the professional advice the taxpayer received, but it is to be doubted that mere reliance on the advice of counsel that no tax is due would suffice to overcome a finding of neglect when there are transactions which are arguably subject to tax. The commission's finding of neglect to file a return is supported by the evidence.

### 4. *Penalty*

The taxpayer also assigns error on account of the assessment of a 10% penalty on the deficiencies pursuant to § 144.250.1, RSMo 1986, relating to sales tax, and 144.665.1, RSMo 1986, relating to use tax. The deficiencies were assessed as of May 1, 1987, and the penalty statutes then in effect must be applied to the extent that they are more favorable to the taxpayer than the statutes they replaced. *State ex rel. Cole v. Nigro,* 471 S.W.2d 933 (Mo. banc 1971).

Although the prior penalty statutes had tracked the "neglect" language of the statute of limitations, the present statutes allow the taxpayer to avoid penalty by showing that the failure was not due to "willful neglect." This is a stronger term than was used in the statute of limitations, and it must necessarily be assumed that the legislature intended a change. *Staley v. Director of Revenue,* 623 S.W.2d 246 (Mo. banc 1981). Conduct may be negligent but not willfully negligent.

The statutes in effect at the time the deficiencies were assessed, and still in effect, indicate that the taxpayer has the burden of demonstrating freedom from willful neglect. No claim of willful neglect has been made, however, and the evidence that the taxpayer believed that no tax was due is inconsistent with a conclusion of willfulness. The commission sustained only a part of the deficiency found by the commission, and we have upheld only a part of its decision. It found that there was no lack of good faith. It is appropriate to conclude that the director has not shown basis for the penalties, and they should be set aside.

The decision of the Administrative Hearing Commission is affirmed in part and reversed in part and the case is remanded to the commission for further proceedings not inconsistent with this opinion.

All concur.