**HEWITT WELL DRILLING & PUMP SERVICE, INC., Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

No. 74891.

Supreme Court of Missouri, En Banc.

Feb. 23, 1993.

Eugene G. Bushmann, Jefferson City, for appellant.

William L. Webster, Atty. Gen., Carole L. Iles, Asst. Atty. Gen., Jefferson City, for respondent.

LIMBAUGH, Judge.

Taxpayer, Hewitt Well Drilling & Pump Service, Inc. [Hewitt], appeals an adverse determination by the Administrative Hearing Commission [AHC] requiring Hewitt to pay consumer use taxes on out-of-state purchases made during 1986 and 1987, together with interest and penalties because the taxes are past due. This Court has jurisdiction because the issues presented can be resolved only by construction of state revenue statutes. *Mo. Const. art. V, § 3.* We affirm the assessment of taxes and interest; we reverse the assessment of penalties.

Hewitt is a Missouri corporation in the business of drilling water wells. As a service industry, it is not required to collect sales tax or file sales tax returns for its business transactions. In 1986 and 1987 Hewitt purchased several items from out-of-state vendors. Its major purchase during that time was a well-drilling rig—a truck with well-drilling equipment mounted to the bed. Neither sales tax nor use tax was paid on the rig or on any other out-of-state purchase. Rex Hewitt, president of the company since 1981, testified that he was not aware that a consumer use tax existed and that he did not believe that any tax was due on the purchase of the well-drilling rig. Furthermore, from his long-time association with other companies in the industry, he knew of no other well-drilling companies that pay consumer use tax on out-of-state purchases of rigs.

In July, 1991, Respondent, Director of Revenue, conducted an audit of Hewitt's 1986 and 1987 purchases to determine liability for consumer use taxes under *§ 144.-610, RSMo 1986.* The last return for the disputed period was due January 31, 1988, but none was filed. Following the audit, the Director issued an assessment against Hewitt, which included tax, interest, and penalties. Nearly all of the assessment was attributed to the purchase of the well-drilling rig.[1]

Hewitt sought review before the AHC alleging that 1) the assessments were barred by a three-year statute of limita-

---

1. The Director assessed use taxes on purchases that Hewitt made in the first, third and fourth quarters of 1986 and in the fourth quarter of 1987. Hewitt purchased the well-drilling rig in the third quarter of 1986; the Director assessed taxes of $6,862.13 for that quarter. Taxes assessed for the other quarters totalled $160.54. The Director contends that Hewitt owes a total of $12,780.84 inclusive of tax, interest and penalties on all purchases.

tions, 2) even if the taxes were proper, no penalties were due because Hewitt was not "willfully negligent" in failing to file returns, and 3) the well-drilling rig was subject to motor vehicle use tax under § 140.-440, RSMo 1986, not consumer use tax, under § 144.610. The AHC sustained the assessments and Hewitt appealed.

We review the factual findings of the AHC to determine whether they are supported by substantial evidence upon the record as a whole; we conduct an independent review of the legal issues. § 536.140, RSMo 1986; Gammaitoni v. Director of Revenue, 786 S.W.2d 126, 128 (Mo. banc 1990).

Because a resolution in Hewitt's favor on its third issue would dispose of the other two issues, we address it first.

## THE WELL–DRILLING RIG AND MOTOR VEHICLE TAXES

■ Hewitt contends that the purchase of the well-drilling rig was not subject to consumer use tax under § 144.610, but was instead subject to motor vehicle use tax under § 144.440. The motor vehicle use tax applies to "motor vehicles ... purchased or acquired for use on the highways ... of this state which are *required to be registered* under the laws of the state of Missouri." (emphasis added) § 144.440.1, RSMo 1986. "Well-drillers" are classified as "special mobile equipment," § 301.-010(49), RSMo Supp.1992, and "special mobile equipment" is *not required to be registered* or titled. § 301.133, RSMo Supp. 1992. As we understand Hewitt's theory, the well-drilling rig must be taxed under the motor vehicle use tax provisions simply because it is a motor vehicle. However, because it is also "special mobile equipment," that need not be registered, it is exempt from the tax. In other words, Hewitt urges that the well-driller is subject to the tax, and at once exempt from the tax.

The theory fails because of Hewitt's mistaken assumption that use tax on motor vehicles is covered exclusively by the motor vehicle use tax statute. Hewitt overlooks § 144.615(4), RSMo 1986, which exempts from consumer use tax only those motor vehicles which are, indeed, subject to motor vehicle use tax. It is apparent that motor vehicles are to be taxed under one statute or the other. We are not willing to ignore the interplay between these statutes to the effect that Hewitt would avoid any tax liability whatsoever. Because Hewitt's well-driller is exempt from motor vehicle use tax, it cannot, therefore, be subject to that tax; by the provisions of § 144.615(4), the well-driller is subject, instead, to consumer use tax.

## STATUTE OF LIMITATIONS

■ Hewitt also contends that the 1991 assessment against 1986 and 1987 purchases are barred by the three-year statute of limitations, § 144.220, RSMo Supp.1992, set out as follows:

> 1. In the case of a fraudulent return or of neglect or refusal to make a return with respect to any tax under this chapter, there is no limitation on the period of time the director has to assess.

> \* \* \* \* \* \*

> 3. In other cases, every notice of additional amount proposed to be assessed under this chapter shall be mailed to the person within three years after the return was filed or required to be filed.

Under these provisions, the tax assessment is barred only in the absence of "neglect or refusal to make a return."

As a preliminary matter, we address Hewitt's argument that the Director bears the burden of proof to show taxpayer neglect. Hewitt submits that the burden of proof to show the inapplicability of an affirmative defense of statute of limitations should be on the party against whom the defense is asserted. See, e.g., Smile v. Lawson, 506 S.W.2d 400, 403 (Mo.1974); Anderson v. Stanley, 753 S.W.2d 98 (Mo. App.1988).

The burden of proof issue, however, is controlled by § 621.050, RSMo Supp.1992, which outlines the procedures for taxpayer appeals to the AHC. Section 621.050.2 states, in pertinent part:

In any proceeding before the administrative hearing commission under this section the burden of proof shall be on the taxpayer except for the following issues as to which the burden of proof shall be on the director of revenue:

(1) Whether the taxpayer has been guilty of fraud with attempt to evade tax;

(2) Whether the petitioner is liable as the transferee of property of a taxpayer (but not to show that the taxpayer was liable for the tax); and

(3) Whether the taxpayer is liable for any increase in a deficiency where such increase is asserted initially after the notice of deficiency was mailed and a protest filed ...

From the plain language of this statute there are only three issues upon which the taxpayer does not bear the burden of proof. The taxpayer carries the burden on *all* other issues. Had the legislature intended to relieve the taxpayer of the burden of proof on other issues, it would have so specified. Accordingly, the burden of proof is not on the Director to show taxpayer neglect, it is on the taxpayer to show the absence of neglect.[2] *See Travelhost of Ozark Mountain Country v. Director of Revenue*, 785 S.W.2d 541, 546 (Mo. banc 1990).

■ Turning to the merits of the neglect issue, Hewitt properly cites *Odorite of America v. Dept. of Revenue*, 713 S.W.2d 833, 838–39 (Mo. banc 1986), and *Lora v. Director of Revenue*, 618 S.W.2d 630, 633–34 (Mo.1981), for the proposition that mere failure to file a return does not constitute "neglect." In *Lora*, the taxpayer relied on a long-standing Department of Revenue policy that proprietors of miniature golf courses were not to be taxed on revenues. The *Lora* Court held that taxpayer's failure to file following a departmental policy change about which the taxpayer had no actual notice did not constitute neglect for purposes of the statute of limitations. *Lora*, 618 S.W.2d at 634. In *Odorite*, the

taxpayer was a manufacturing concern that, although failing to file a sales tax return, had provided the Director with information concerning its business activities and had sought assistance from the Director in determining whether it was exempt from sales tax. In that situation this Court held that failure to file did not constitute neglect for purposes of *§ 144.250.1, RSMo 1978.*[3] *Odorite*, 713 S.W.2d at 839.

But in *Bridge Data Co. v. Director of Revenue*, 794 S.W.2d 204 (Mo. banc 1990), this Court held that failure to file does constitute neglect, regardless of the taxpayer's belief that no tax was due, at least where the taxpayer did not otherwise disclose its operations to the Department and could not rely on previous decisions and policy of the Department as an excuse for nondisclosure. *Bridge Data*, 794 S.W.2d at 208. Similarly, in this case, Hewitt's belief that no tax was due should not excuse its neglect in failing to file. Like the taxpayer in *Bridge Data*, Hewitt "could properly be expected to disclose its transactions in some manner, so that the director may audit them and review their legal status." *Id.* at 208. Instead, Hewitt made no attempt to ascertain its potential tax liability much less to make some disclosure to the Department. Hewitt's indifferent conduct is more than mere failure to file and is sufficient to constitute neglect. Therefore, the statute of limitations is no bar to the Director's assessments.

## PENALTIES

■ Hewitt also assigns error to the Director's assessment of penalties. *Section 144.665.1, RSMo 1986*, provides for imposition of penalties "unless it is shown that such failure [to file use tax return] is due to reasonable cause and not the result of willful neglect, evasion, or fraudulent intent." In this case, the AHC concluded that Hewitt had not shown "reasonable cause" for failing to file the returns, and it did not reach what was apparently per-

---

**2.** From the transcript, we note that both parties presented evidence on the neglect issue.

**3.** *Section 144.250.1, RSMo 1978*, provided for the imposition of penalties of 10% of taxes owing in cases where a taxpayer neglected to file a return.

ceived to be a second issue of "willful neglect." At first glance, the statute appears to require a taxpayer to prove that failure to file is both 1) due to reasonable cause, and 2) not due to willful neglect, evasion or fraudulent intent. No case has addressed the question of whether reasonable cause is an issue separate from willful neglect, and even in this case, the parties have focused their arguments solely on the issue of the presence or absence of willful neglect. But, under the Commission's interpretation of the penalty statute, a taxpayer who might show the absence of willful neglect, as Hewitt attempts to do in this case, is nevertheless liable for penalties if there is no reasonable excuse for failure to file. The standards of willful neglect, evasion or fraudulent intent obviously require more culpability than the mere absence of reasonable cause. Because taxpayers will have more difficulty showing reasonable cause than to show the absence of willful neglect, all cases would be decided solely on the issue of reasonable cause, and the language of "willful neglect, evasion, or fraudulent intent" would be meaningless. In view of the seemingly irreconcilable conflict between the test of "reasonable cause" and the test of "willful neglect, evasion, or fraudulent intent," we apply the well-settled rule that taxing statutes, especially those which impose penalties, are to be strictly construed against the taxing authority and in favor of the taxpayer. *Travelhost*, 785 S.W.2d at 546. Therefore, our inquiry is whether the taxpayer can show the absence of "willful neglect," rather than presence of "reasonable cause."[4]

■ "Willful neglect" under the penalty statute is a stronger standard than "neglect" under the statute of limitations; conduct that is negligent may not be willfully negligent. *Bridge Data*, 794 S.W.2d at 208. "Willful" has been defined as intentional or self-determined. *Webster's Third New International Dictionary (1986)*. This Court has found willful neglect under § *144.665.1*, where taxpayers, in the ab-

sence of good faith, failed to file sales or use tax returns.

In *Gammaitoni v. Director of Revenue*, 786 S.W.2d 126, taxpayer owed both sales and use taxes. We stated that it should have been clear to taxpayer that sales tax was due where taxpayer was engaged in the business of selling and renting videotapes. Where the taxpayer did not collect or remit sales tax on these obviously taxable transactions, we held that taxpayer was willfully negligent for failure to file. Also, in *High Adventure Game Ranch v. Director of Revenue*, 824 S.W.2d 905 (Mo. banc 1992), we found willful negligence where taxpayer called the office of the Director of Revenue to ask whether it needed a sales tax license and, failing to receive a response to its inquiry, did not file a return. The common thread of *Gammaitoni* and *High Adventure* is that the taxpayers could not have had a good faith belief that they were not subject to tax.

The AHC in this case found that Hewitt's president believed that the purchases of the well-drilling rig and the other items were not subject to consumer use tax. Implicit in this finding is that Hewitt's belief was held in good faith. The evidence supports that conclusion. As the Court held in *Bridge Data*, "evidence that the taxpayer believed that no tax was due is inconsistent with a conclusion of willfulness." *Bridge Data*, 794 S.W.2d at 208. Hewitt has met its burden to show that it was not willfully negligent in failing to pay taxes owing on the well-drilling rig, and on the other purchases, and the penalties should be set aside.

■ Interest is due on all taxes owing. A taxpayer's excuse for failure to pay is irrelevant to an assessment of interest. §§ *144.720, 144.170*, RSMo 1986; *Travelhost*, 785 S.W.2d at 546.

The assessment of consumer use taxes and interest is affirmed; the assessment of penalties is reversed.

---

4. We also note that a finding of the absence of evasion or fraudulent intent does not necessarily preclude a finding of willful neglect. However, a finding of the absence of willful neglect does preclude a finding of evasion or fraudulent intent.

ROBERTSON, C.J., COVINGTON, HOLSTEIN, THOMAS and PRICE, JJ., and SHANGLER, Special Judge, concur.

BENTON, J., not sitting.