**DIRECTOR OF REVENUE, Appellant,**

v.

**ARMCO, INC., Respondent.**

**No. 71784.**

Supreme Court of Missouri,
En Banc.

April 17, 1990.

Rehearing Denied May 15, 1990.

William L. Webster, Atty. Gen., James B. Deutsch, Asst. Atty. Gen., Jefferson City, for appellant.

W.H. Bates, Karen M. Iverson, Thomas J. McMahon, Kansas City, for respondent.

ROBERTSON, Judge.

The Director of Revenue (Director) seeks review of a decision of the Administrative Hearing Commission (Commission) invalidating a sales tax assessment against Armco, Inc. (Armco). The Director urges the reversal of the Commission's decision because: (1) the exemption claimed by Armco for transactions "in commerce" between the states, Section 144.030.1,[1] is not applicable when title passes from vendor to purchaser in Missouri; and (2) even if the exemption applies, Armco failed to obtain exemption certificates from its purchasers at the time of the sales as required by Section 144.210.1. This case involves the construction of the revenue laws of this state. This Court has exclusive appellate jurisdiction. Mo. Const. art. V, § 3. We reverse and remand with directions.

I.

The facts are stipulated. Armco manufactures steel and steel products in Missouri. Burlington Northern Railroad Company (Burlington) and Union Pacific Railroad Company (Union Pacific) ordered railroad spikes from Armco by telephone from their offices in St. Paul, Minnesota, and Omaha, Nebraska, respectively. Armco agreed and understood that Union Pacific spikes would be shipped F.O.B. from Armco's plant to Cheyenne, Wyoming. Burlington intended that its spikes be shipped

---

1. All references are to RSMo 1986 unless otherwise indicated.

to various destinations in Montana, Minnesota, North Dakota, Nebraska, Oklahoma, Washington, and Wyoming.

At its expense, Armco loaded the spikes on a railroad car at Armco's plant and moved them to a siding location on Armco's property. The siding tracks were connected to railroad tracks owned and operated by railroads conducting business in interstate commerce. The railroad cars used by Armco were in the general pool of railroad cars used in interstate commerce. Neither Burlington nor Union Pacific has railroad tracks running to Armco's plant. A carrier other than Burlington or Union Pacific transported the loaded railroad cars from Armco's plant. From the time that Armco loaded the spikes aboard the railroad cars, the buyers bore all risk of loss or damage.

The Missouri Pacific Railroad Company (MoPac) transported all railroad cars containing spikes sold to Union Pacific from Armco's plant. Once the railroad cars left the plant, they remained on MoPac tracks until they reached an interchange with Union Pacific tracks in Kansas City, Kansas. While traveling on MoPac tracks, the railcars were within the exclusive control of MoPac, and MoPac used its own engines and crews to operate the train. Upon their arrival in Wyoming, Union Pacific stored its spikes for use in building or repairing railroad tracks. When Union Pacific used the spikes, it paid, under direct-pay permits, sales or use taxes to the states in which the spikes were ultimately used. Under the terms of those permits, Union Pacific did not pay sales tax for its purchases of property in the permit states, but maintained a computerized inventory system to calculate and pay sales or use taxes based upon actual use of taxable property within the permit states.

The Kansas City Terminal Railway Company (KTC) transported all railroad cars loaded with spikes purchased by Burlington from Armco's plant to an interchange with Burlington tracks in Kansas City, Missouri. While on KTC tracks, KTC controlled the railroad cars, using its own engines and crew to operate the train.

Burlington also used the spikes to build or repair its railroad tracks in the vicinity of the various destination points. Like Union Pacific, Burlington paid sales or use taxes to the states where the uses occurred.

On June 19, 1987, respondent assessed tax against Armco for its sales of spikes to Burlington and Union Pacific from May 1, 1984 through May 31, 1986. Armco filed a timely appeal with the Commission. As part of the proceedings before the Commission, Armco obtained written claims of exemption from Burlington and Union Pacific in April, 1988.

The Commission found that Armco's sales were "in commerce" between Missouri and other states and exempt from Missouri sales tax under Section 144.030.1. This petition for review followed.

## II.

Armco contends that its sales to Burlington and Union Pacific are "retail sales ... in commerce between this state and any other state of the United States" and thus exempt under Section 144.030.1. The Director argues that cases of this Court have established a bright line test that determines taxability based on where title passes. *Kurtz Concrete, Inc. v. Spradling,* 560 S.W.2d 858 (Mo. banc 1978). The Director further urges that even if Armco's sales are exempt, Armco's failure to obtain and keep the exemption certificates required by Section 144.210.1 renders the exemption unavailable to Armco.

The Director's second argument is dispositive. In reaching this conclusion, we assume **arguendo** that the sales at issue here are in commerce and exempt from taxation.

Section 144.210.1 provides that "[e]xemption certificates signed by the purchaser ... shall be required to be kept by the seller as evidence for any exempt sales claimed...." In *Van Cleave Printing Co. v. Director of Revenue,* 784 S.W.2d 794 (Mo. banc 1990), the taxpayer claimed the exemption but did not obtain or keep exemption certificates as evidence that the sale was exempt. This Court observed that

the language of Section 144.210.1 is clear and unambiguous and held that "an exemption certificate is required evidence for any claim of exemption." 784 S.W.2d at 796. In the absence of such certificates, the exemption is lost.

Neither *Van Cleave* nor any other case of this Court has determined whether exemption certificates may be produced for the first time in proceedings before the Commission. We are bound by the clear and unambiguous language of the statute as to the nature of the evidence required to prove a sales tax exemption. Section 144.-210.1 is not free of ambiguity, however, as to whether exemption certificates initially produced on administrative review retain their vitality for purposes of the exemption claimed.

Canons of construction direct that exemption statutes be strictly construed against the taxpayer. *Missouri Public Service Co. v. Director of Revenue*, 733 S.W.2d 448, 449 (Mo. banc 1987). We believe a similar strict construction is mandated for statutes establishing conditions for claiming an exemption. "[T]axation is the rule; exemption is the exception; and that claims for exemption are not favored in the law." *Bethesda General Hospital v. State Tax Commission*, 396 S.W.2d 631, 633 (Mo. 1965). The polestar, as always, remains the intent of the legislature.

Section 144.210.1 serves purposes of administrative convenience and resource efficacy. These purposes are the focus of the phrase "kept by the seller" in the statute. The taxpayer bears the burden of producing, and the Director is entitled to have, all of the evidence required to determine that an otherwise taxable transaction is not taxable before him when he makes his initial determination of tax liability. Such a reading of the statute encourages efficiency in tax enforcement, pretermitting the need of the taxpayer for, and avoiding the expense to the state of, appeals to the Commission founded on evidence not before the Director.

We believe that Section 144.210.1 imposes on the seller the duty to obtain and maintain exemption certificates from the purchaser and to have such certificates available for, and at the time of, the Director's audit. Because Armco failed to obtain and keep exemption certificates on hand for the review of the Director at the time of his audit, Armco has lost the benefit of the exemption it claims. We need not decide whether Section 144.030.1 applies to the transaction at issue.

### III.

The decision of the Administrative Hearing Commission is reversed and the cause remanded for entry of an order dismissing Armco's appeal.

HIGGINS, COVINGTON and BILLINGS, JJ., concur.

HOLSTEIN, J., dissents in separate opinion filed.

BLACKMAR, C.J., and RENDLEN, J., dissent and concur in dissenting opinion of HOLSTEIN, J.

HOLSTEIN, Judge, dissenting.

I respectfully dissent. The majority opinion focuses solely on the words "kept by the seller" and disregards the words "as evidence" which follow immediately thereafter in § 144.210.1, RSMo 1986.

The majority opinion relies heavily on the rule of construction that exemption provisions in the revenue laws be construed strictly against taxpayers. A more fundamental principal is that words used in statutes should be given their plain and ordinary meaning and, where no ambiguity exists, the Court has no business foraging among the rules of statutory construction to look for or impose another meaning. *In re Estate of Thomas*, 743 S.W.2d 74, 76 (Mo. banc 1988). The plain meaning of the word "evidence" is "any species of proof, or probative matter, legally presented at a trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, exhibits, concrete objects, etc. for the purpose of inducing belief in the minds of a court or jury as to their contention." *Black's Law Dictionary*, 5th ed., 1979. Evidence is something legally

submitted to a competent tribunal as a means of ascertaining the truth of any alleged matter of fact under investigation before it. *Webster's Third New International Dictionary*, unabr., 1966. To be required to keep exemption certificates as evidence can mean no more than that the certificates be kept for presentation at a trial of the issue of sales tax exemption before a competent tribunal.

The majority seems to hold that an audit is the equivalent of "the trial of an issue" and that the sales tax auditor for the Director of Revenue is a "competent tribunal" for hearing evidence. That implicit holding is simply not substantiated by law. The only statutory disclosure required by the taxpayer to the Director is the sales tax return. § 144.100. A review of chapter 144 fails to disclose any authority in the Director of Revenue to do more than make assessments of sales and use taxes based on sales tax returns or other available information. *See* § 144.210.2.

The statutes do not say when the exemption certificates must be obtained or how long the documents must be kept. Apparently, keeping the certificates for any period of time, however short, prior to being used or required as evidence is sufficient. The statutes have no provision requiring the presentation or keeping of exemption certificates during sales tax audits. Regulations promulgated by the Director purport to give him discretion to require that sales tax exemption certificates be available for inspection at the commencement of an audit. 12 C.S.R. 10–3.538. However, neither the regulations nor the statutes suggest that failure to produce the exemption certificates at an audit makes the certificates inadmissible when offered as evidence at a hearing.

By imposing the sanction of inadmissibility of exemption certificates which were not provided at an audit, this Court acts without statutory authority. The statute only requires the taxpayer to file a sales tax return. But the Court requires more. Hereafter, taxpayers must cooperate in the petty tyranny of random tax audits or be subject to the sanction. To so hold is to amend the statute. That prerogative belongs to the legislature. Administrative convenience and resource efficacy do not justify judicial legislation.

The first and only legally constituted tribunal to hear evidence on the question of sales tax liability is the Administrative Hearing Commission. §§ 144.261 and 621.050. Thus, exemption certificates are only required at the evidentiary hearing before the Administrative Hearing Commission. In this case, the respondent presented exemption certificates at that hearing.

I agree with the Administrative Hearing Commission's determination that ARMCO's sale to Burlington and Union Pacific were retail sales in commerce between this state and another state of the United States. The sales should be exempt to the extent reflected in the exemption certificates presented at the hearing. I would affirm.