**ZIP MAIL SERVICES, INC., Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

**No. SC 82087.**

Supreme Court of Missouri, En Banc.

May 9, 2000.

Alan G. Gerson, Michael A. Kaplan, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Alana M. Barragan–Scott, Asst. Atty. Gen., Harry D. Williams, Dept. of Revenue, Jefferson City, for Respondent.

RONNIE L. WHITE, Judge.

On September 30, 1997, Appellant Zip Mail Services, Inc. (Zip Mail) filed a petition with the Administrative Hearing Commission (AHC) regarding assessments issued by the Director of Revenue (Director) against Zip Mail for unpaid use tax for years 1991 through 1995. The AHC held a hearing and filed its findings of fact and conclusions of law. It found that Zip Mail was properly subject to the use tax, along with accrued interest and additions assessed by the Director. On October 28, 1999, Zip Mail filed its petition for review in this Court. We affirm the determination of the AHC.

## I.

Zip Mail is a Missouri corporation in the business of processing mail from customers in the St. Louis, Chicago, and Detroit metropolitan areas. Once mail is received, Zip Mail electronically reads the addresses on the envelopes, applies scanable bar-

codes containing this address information, and sorts the mail to be delivered to the United States Postal Service (USPS). For this service, Zip Mail charges its customers between 0.5 cent and 1 cent per envelope for picking up the mail. In addition, because it's customers must meter their postage at the customary rate before Zip Mail takes possession of their mail, Zip Mail receives rebates from USPS for the difference between the usual metered cost and the discounted cost USPS charges for mail presorted prior to delivery.

Once Zip Mail receives metered, unsorted mail from its customers, it feeds the mail into a sorting device. This device scans the address listed on each piece of mail, compares each address with a database of some 85,000,000 different addresses to find an address match, and applies an eleven digit bar-code with an ink-jet printer that identifies a particular house or business in a given zip code. The bar-coded mail is then sorted by zip code into individual bins. The sorted mail is bundled and delivered to the USPS for verification, processing, and delivery.

From February 1991 through December 1995, Zip Mail purchased two sorting machines, four optical readers, two multi-line character readers, a meter machine, and various parts and software. After an audit, the Director assessed use tax of $30,254.28 against Zip Mail on purchases totaling $716,077.50. In addition to the tax, the Director assessed $1,512.72 in additions and $15,402.70 in interest.

## II.

■ In its first allegation of error, Zip Mail claims that the AHC erred when it upheld the Director's assessment of use tax against Zip Mail for the character readers, bar-code imprinters, scanners, and sorting machinery used in its business.

This Court reviews the AHC's interpretation of revenue laws *de novo*.[1] The underlying controversy in this case involves application of section 144.610,[2] which imposes a use tax for the privilege of storing, using, or consuming any article of tangible personal property within the State of Missouri that is not subject to sales tax. While Zip Mail concedes that the purchased items would otherwise be subject to the use tax, it argues that the purchases fit within an exemption provided sec. 144.030.2(5), which states:

> Machinery and equipment, and the materials and supplies solely required for the installation or construction of such machinery and equipment, purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants in the state if such machinery and equipment is used directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption.

Through this exemption, property is exempted from use tax where it is "(1) used directly (2) in manufacturing (3) a product which is intended to be sold ultimately for final use or consumption (4) if the machinery or equipment was purchased (a) to replace existing equipment by reason of design or product changes or (b) to expand existing manufacturing."[3] This exemption was enacted by the legislature to "encourage the production of items ultimately subject to sales tax and to encourage the location and expansion of industry in Missouri."[4]

■ Zip Mail contends that its purchase of mailing machinery, including character readers, bar-code imprinters, scanners, and sorters, constitute machinery or equipment that enabled Zip Mail to expand its existing manufacturing. The AHC, how-

---

1. *L & R Egg Co. v. Director of Revenue,* 796 S.W.2d 624, 625 (Mo. banc 1990).

2. All statutory references are to RSMo 1994, unless otherwise noted.

3. *Concord Publishing House, Inc. v. Director of Revenue,* 916 S.W.2d 186, 190 (Mo. banc 1996).

4. *Id.*

ever, expressly noted that this contention was not adequately proven by Zip Mail. While Zip Mail largely assumes that the purchase of this equipment would expand its existing production facility, it has failed to meet its burden of proof on this point. Zip Mail argues that the AHC overlooked evidence demonstrating an increase in its production capacity and that, in accordance with *Concord Publishing House*, an increase in production capacity constitutes expansion.[5] It points to three exhibits before the AHC and testimony of Zip Mail's president to support this contention.[6] However, the exhibits and testimony to which Zip Mail points are only descriptive of its process. They fail to explain how production capacity was increased, as is required by *Concord Publishing House*.[7]

Zip Mail next contends that the production of printed materials constitutes manufacturing.[8] It notes this Court's decision in *Galamet Inc. v. Director of Revenue* that manufacturing is "the alteration or physical change of an object or material in such a way that produces an article with a use, identity and value different from the use, identity and value of the original."[9] Zip Mail argues that the envelopes printed with its bar-code have been manufactured into a new product by comparing the use of its machinery to produce bar-codes to machinery that purifies drinking water,[10] the quarrying of rock,[11] the manufacture of stationery,[12] and the butchering of pork.[13] Zip Mail argues that in each instance you have the same product that has been refined by some method. It argues that the envelopes it receives have been similarly refined for a better use by its printing a bar-code on the envelope face. It concludes by noting that an envelope with a bar-code has added value beyond that of an envelope without the bar-code.

■ We need not reach this argument, as its machinery generates neither a "sale of tangible personal property" nor a "taxable service" for final use or consumption.[14] In order to meet this requirement, Zip Mail relies on the bar-codes it sprays on envelopes in its system. This Court in *International Business Machines Corporation v. Director of Revenue* recognized that section 144.010.1(8) expressly excludes computer printouts and computer output from the sale of a product in section 144.030.2(5).[15] Zip Mail argues that the bar-codes are not a computer printout or computer output as discussed in *IBM*,

5. See *Concord Publishing House*, 916 S.W.2d at 195.

6. The exhibits Zip Mail cites include copies of five bar-coded envelopes, two bar-code templates, and a silent videotape of Zip Mail's operation. These objects in no way establish an increase in production capacity. Similarly, Zip Mail points to testimony given by its president. While his testimony did explain the purpose of each machine, he never addressed any potential increase in production capacity.

7. *Concord Publishing House* merely holds that the physical plant need not be expanded to constitute expansion under section 144.030.2(5). Instead, evidence that the capacity to produce has increased is sufficient. No such evidence was presented ion this case.

8. *Heidelberg Central, Inc. v. Director of Revenue*, 476 S.W.2d 502, 506 (Mo.1972); *see also International Business Machines Corporation v. Director of Revenue*, 958 S.W.2d 554, 557

(Mo. banc 1997) (noting that a "product" is an "output with market value").

9. *Galamet, Inc. v. Director of Revenue*, 915 S.W.2d 331, 333 (Mo. banc 1996).

10. *Jackson Excavating Co. v. Admin. Hearing Comm.*, 646 S.W.2d 48 (Mo.1983).

11. *West Lake Quarry & Material Co. v. Schaffner*, 451 S.W.2d 140 (Mo.1970).

12. *Heidelberg Central, Inc. v. Director of Revenue*, 476 S.W.2d 502, 506 (Mo.1972).

13. *Wilson & Co., Inc. v. Dept. of Revenue*, 531 S.W.2d 752 (Mo.1976).

14. See *IBM Corp.*, 958 S.W.2d at 557 (holding that for purposes of section 144.030.2(5), the term "product" is defined as an output with market value, which includes both products and services).

15. *Id.* at 558.

which involved computer manipulation of financial data to create financial reports for investment companies, shareholders, and the media. Instead, it contends that the bar-codes merely serve as a template to simplify and expedite the sorting of the mail. We find that the bar-codes imprinted by Zip Mail fit squarely within the exception in *IBM Corp.*, as the bar-codes are the final computer output attributable to Zip Mail's optical scan equipment and character recognition software.

Furthermore, notwithstanding this exception for computer output, the bar-codes do not constitute a product *for final use or consumption* as required by section 144.030.2(5). Zip Mail contends that the bar-code imprinted on each piece of mail brought to Zip Mail is a manufactured product for final consumption, because it enables USPS to process the encoded mail more efficiently and helps to expedite delivery. To support this contention, Zip Mail relies heavily on a case from the Minnesota Supreme Court.[16] In a case factually similar to the instant case, the Minnesota Supreme Court held that ink bar-codes printed by Zip Sort Corporation were a manufactured product and that the bar-codes constituted Zip Sort's personal property. It concluded that Zip Sort Corporation was entitled to a refund on sales taxes paid for the retail purchase of capital equipment.[17]

The AHC distinguished the *Zip Sort* case from the case before us. Minnesota law defines a sale as (1) a transfer of title or (2) possession of tangible personal property for consideration.[18] When the Minnesota court held that Zip Sort sold the bar-codes to the post office,[19] it must have relied on the transfer of possession of the bar-coded envelopes, as there was no transfer of title to them. Missouri's statutory definition of "sale" is much narrower than that of Minnesota. Section 144.010.1(8) defines a "sale at retail" as a transfer of the ownership of, or title to, tangible personal property for use or consumption for a valuable consideration. While Zip Mail concedes that it neither owns the envelopes nor possesses title to them, it argues that it owns the bar-codes imprinted on the envelopes and that these are sold to USPS for valuable consideration. We find this argument unpersuasive. The dissent in *Zip Sort* noted "the physical properties of the bar-codes – the ink printed on the envelopes – 'were merely incidental to the services performed,' – the labeling and bundling of mail for easier processing by the postal service."[20] The postage rate reduction offered by USPS was not to acquire an interest in ink imprinted on envelopes it does not own. Rather, the postage reduction was consideration for the service of having mail presorted for delivery.

### III.

In its final point on appeal, Zip Mail contends that its purchases of equipment and machinery should be exempt from use tax under section 144.030.2(6). This section exempts from use tax personal property used exclusively in manufacturing, processing, modifying, or assembling products sold to the United States or any of its agencies.[21] Zip Mail notes that post offices are included in agencies of the United States for the purpose of this exemption.[22]

---

16. See Zip Sort, Inc. v. Commissioner of Revenue, 567 N.W.2d 34 (Minn.1997).

17. The capital equipment under the Minnesota statute was required to be used by the purchaser for manufacturing and other like uses.

18. Minn.Stat. section 297A.01(3)(a).

19. *Zip Sort,* 567 N.W.2d at 41.

20. *Zip Sort,* 567 N.W.2d at 42 (quoting *Fingerhut Prod. Co. v. Commissioner of Revenue,* 258 N.W.2d 606, 609 (Minn.1977)) (Stringer, J., concurring in part and dissenting in part).

21. See Section 144.030.2(6); 12 C.S.R. 10–3.262.

22. See 12 C.S.R. 10–3.248(1).

For reasons already discussed, this point fails. First, the property in question is not used *exclusively for the United States or its agencies.* While Zip Mail receives compensation from USPS, it customers are private entities seeking mail services. Second, even if we assume that the use is exclusively for the government, this Court finds that the business of Zip Mail does not constitute manufacturing and does not involve the sale of personal property.

Accordingly, the decision of the AHC is affirmed.

All concur.