**BRANSON PROPERTIES
USA, L.P., Appellant,**

v.

**DIRECTOR OF REVENUE,
Respondent.**

No. SC 84948.

Supreme Court of Missouri,
En Banc.

July 29, 2003.

Richard E. Lenza, David N. Zimmerman, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Victorine R. Mahon, Asst. Atty. Gen., for Respondent.

DUANE BENTON, Judge.

■ The Administrative Hearing Commission denied a tax exemption to Branson Properties USA ("BPU"). Because the petition for review involves construction of the revenue laws, this Court has exclusive appellate jurisdiction. *Mo. Const. art. V, sec. 3.* Affirmed.

## I.

BPU substantially upgraded an amusement park with 30 rides—including a roller coaster, carousel, go-carts, bumper-cars, and Ferris wheel. BPU purchased these rides for $2,010,852.22. BPU replaced various parts on the rides for $53,810.96.

Customers do not pay an admission fee to enter the park, but buy tickets per-ride, or a "superpass" for all rides. BPU collects sales tax on tickets and passes. See *sections 144.010.1(10)(a), 144.020.1(2) RSMo 2000.*[1]

The Director audited BPU, assessing $1,717.30 in sales tax, and $95,800.79 in use tax on its purchase of the rides and parts. See *section 144.610.1*

BPU claims a "manufacturing" or "producing" exemption. Subdivisions 144.030.2(4) and (5) exempt from sales and use tax:

(4) Replacement machinery, equipment, and parts ... used directly in manufacturing, mining, fabricating or producing a product which is intended to be sold ultimately for final use or consumption....

(5) Machinery and equipment, and parts and the materials and supplies solely required for the installation or construction of such machinery and equipment, purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants in the state if such machinery and equipment is used directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption[.]

■ The AHC ruled for the Director. The AHC's interpretation of revenue laws is reviewed de novo, and upheld when authorized by law and supported by competent and substantial evidence upon the whole record. *Section 621.193;* see *Ovid Bell Press, Inc. v. Director of Revenue,* 45 S.W.3d 880, 884 (Mo. banc 2001).

■ BPU has the burden to show it qualifies for an exemption. *Utilicorp United, Inc. v. Director of Revenue,* 75 S.W.3d 725, 727 (Mo. banc 2001). Tax exemptions are strictly construed against the taxpayer. *Director of Revenue v. Armco,* 787 S.W.2d 722, 724 (Mo. banc 1990). An exemption is allowed only upon clear and unequivocal proof, and doubts are resolved against the party claiming it. *House of Lloyd v. Director of Revenue,* 824 S.W.2d 914, 918 (Mo. banc 1992), overruled on other grounds by *Sipco, Inc. v. Director of Revenue,* 875 S.W.2d 539, 541–42 (Mo. banc 1994). Exemptions are interpreted to give effect to the General Assembly's

---

1. All statutory references are to RSMo 2000.

intent, using the plain and ordinary meaning of the words. *Rotary Drilling Supply, Inc. v. Director of Revenue,* 662 S.W.2d 496, 499 (Mo. banc 1983).

## II.

■ The sole issue is whether BPU engages in "manufacturing" or "producing." "Manufacturing" is "the alteration or physical change of an object or material in such a way that produces an article with a use, identity, and value different from the use, identity, and value of the original." *Galamet, Inc. v. Director of Revenue,* 915 S.W.2d 331, 333 (Mo. banc 1996). "Producing" was added, in 1998, to subdivision 144.030.2(4). See *1998 Mo. Laws 1672.*

The activities in subdivisions 144.030.2(4) and (5)—manufacturing, mining, fabricating, and producing—all transform an input into an output with a separate and distinct use, identity, or value. See *Southwestern Bell Telephone Co. v. Director of Revenue,* 78 S.W.3d 763, 767-68 (Mo. banc 2002); *Galamet,* 915 S.W.2d at 333; *House of Lloyd,* 824 S.W.2d at 919; *L & R Egg Co. v. Director of Revenue,* 796 S.W.2d 624, 626 (Mo. banc 1990); *Jackson Excavating Co. v. Administrative Hearing Com'n,* 646 S.W.2d 48, 51 (Mo.1983). True, subdivision (4) includes "producing," while subdivision (5) does not. This difference is immaterial in the present case.

Over the last 30 years, this Court has determined that certain acts are not transformations within the meaning of subdivisions (4) and (5), because the output does not have a separate and distinct use, identity, or value:

Retreading or recapping tires. See *State ex rel. AMF Inc. v. Spradling,* 518 S.W.2d 58, 61-62 (Mo.1974).

Cleaning and repairing uniforms. See *Unitog Rental Services v. Director of Revenue,* 779 S.W.2d 568, 570-71 (Mo. banc 1989).

Cleaning and inspecting eggs. See *L & R Egg Co. v. Director of Revenue,* 796 S.W.2d at 626-27; see also *Rotary Drilling Supply,* 662 S.W.2d at 500 (drilling test holes to search for minerals is not transformation, but only exploration).

Repackaging products. See *House of Lloyd,* 824 S.W.2d at 919.

Transmitting or distributing electricity. See *Utilicorp United,* 75 S.W.3d at 729.

■ Conversely, the required transformation does occur where the output has a separate and distinct use, identity, or value:

Grinding, crushing, and sorting rock into various sizes for commercial use. See *West Lake Quarry & Material Co. v. Schaffner,* 451 S.W.2d 140, 143 (Mo. 1970).

Commercial printing. See *Heidelberg Central, Inc. v. Director of Dept. of Revenue,* 476 S.W.2d 502, 506 (Mo.1972); see also *Ovid Bell Press,* 45 S.W.3d at 884.

Slaughtering livestock to create marketable food. See *Wilson & Co., Inc. v. Department of Revenue,* 531 S.W.2d 752, 754-55 (Mo.1976); see also *Sipco,* 875 S.W.2d at 542.

Treating and purifying water. See *Jackson Excavating,* 646 S.W.2d at 51.

Converting old automobiles/appliances into steel shreds for commercial use. See *Galamet,* 915 S.W.2d at 333-34.

Manipulating and affixing words onto a page to create a newspaper. *Concord Pub. House, Inc. v. Director of Revenue,* 916 S.W.2d 186, 190 (Mo. banc 1996).

■ BPU argues that it "manufactures" or "produces" an intangible product or service subject to sales tax. BPU notes that the General Assembly codified this Court's holdings that subdivisions 144.030.2(4) and (5) include intangible products and services

subject to sales or use tax. *1998 Mo. Laws 1669*, codified as *section 144.010(14)*; see *International Business Machines v. Director of Revenue*, 958 S.W.2d 554, 557 (Mo. banc 1997); *Concord Pub. House*, 916 S.W.2d at 190; *Bridge Data Co. v. Director of Revenue*, 794 S.W.2d 204, 206 (Mo. banc 1990).

BPU claims that its rides—acting on the inputs of electricity, water, operators, lights, designs, performers, atmosphere, aesthetics, and safety equipment—create a separate and distinct output—entertainment including thrills, sensations, excitement, amusement, and "fun" for its customers. BPU summarizes: "The combination of the mechanical rides, power, operators and other intangible aesthetics creates a change in the mood, emotion or other sensory perceptions of customers to create the entertainment experience and products."

BPU relies on the *Southwestern Bell* case. There, telephone services were intangible products, subject to sales tax. *Southwestern Bell*, 78 S.W.3d at 768. The taxpayer qualified for an exemption because voice input was transformed into electric impulses, so that the output was not the same, but a complete reconstruction of the input. See *id.* In the earlier *IBM* case, a transformation occurred when financial data, organized through computer technology, resulted in an output with a separate and distinct use, identity, and value. See *IBM*, 958 S.W.2d at 557; see also *DST Systems, Inc. v. Director of Revenue*, 43 S.W.3d 799, 802 (Mo. banc 2001). In the *Bridge Data* case, raw data was transformed, through computer reorganization, into securities information for institutional traders. See *Bridge Data*, 794 S.W.2d at 206. A transformation occurred because "what [came] out of the system [was] clearly different from what went into it." See *Bridge Data*, 794 S.W.2d at 206; see also *Concord Pub. House*, 916 S.W.2d at 191.

■ Thus, even when the product is intangible, there still must be a clear and identifiable transformation of an input into an output with a separate and distinct use, identity, or value. Here, there is no such transformation. The inputs are not significantly changed. The outputs of the system are *not* clearly and identifiably different from what went into it. See *Bridge Data*, 794 S.W.2d at 206; see also *Concord Pub. House*, 916 S.W.2d at 191. In sum, a sufficient transformation did not occur. See *Utilicorp United*, 75 S.W.3d at 729 (same electricity transmitted and distributed); *House of Lloyd*, 824 S.W.2d at 919 (same products repackaged); *L & R Egg*, 796 S.W.2d at 626–27 (same eggs cleaned and inspected); *Unitog Rental Services*, 779 S.W.2d at 570–71 (same uniforms cleaned and repaired); *AMF*, 518 S.W.2d at 61–62 (same tires retreaded or recapped).

BPU does not engage in "manufacturing" or "producing" that qualifies for an exemption under subdivisions 144.030.2(4) and (5).

### III.

The decision of the AHC is affirmed.

All concur.