**BRINKER MISSOURI, INC., Appellant,**

v.

**DIRECTOR OF REVENUE,**
Respondent.

**No. SC 90463.**

Supreme Court of Missouri,
En Banc.

Aug. 31, 2010.

Ann K. Covington, Edward F. Downey, Carole L. Iles, Bryan Cave LLP, Jefferson City, for Appellant.

Jeremiah J. Morgan, Deputy Solicitor General, Attorney General's Office, Jefferson City, for Respondent.

LAURA DENVIR STITH, Judge.

Brinker Missouri, Inc. seeks review of an Administrative Hearing Commission decision correctly determining that Brinker's purchases of kitchen equipment and other items were not exempt from use tax pursuant to sections 144.030.2(4) and (5)[1] and that Brinker's purchases of non-disposable tableware, cutlery, chairs, tables and similar items for use by its customers were not exempt from use tax pursuant to section 144.615(6). Brinker does not qualify for the exemptions under sections 144.030.2(4) and (5) because its restaurants are not "plants" and because it prepares· and serves food rather than manufactures a product. Brinker also is not entitled to claim a resale exemption under section 144.615(6) or a sale exclusion under section 144.605(13). It neither permanently transfers nor charges its customers additional consideration for giving them the privilege of sitting in a chair and using silverware to eat their meals on a dish or drink their soup from a bowl or tea in a glass while

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

sitting at a table. The Court rejects Brinker's argument that use of these items constitutes a sale within the meaning of Missouri law. The commission's decision is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The material facts are not in dispute. Brinker Missouri, Inc., headquartered in Dallas, Texas, owns and operates 23 restaurants in Missouri, including Chili's Grill & Bar, Romano's Macaroni Grill, On the Border and Maggiano's Little Italy. Each restaurant prepares and sells food and drink to the public [2] and is subject to Missouri sales and use tax where applicable.

During the relevant period—October 1, 2003, to December 31, 2004—Brinker purchased what it refers to as "kitchen machinery, equipment and parts" that it used to prepare food and drinks for its customers and to refrigerate or heat them pending serving. Although the record does not specify the specific nature of this "machinery" or "equipment," it appears to refer to stoves, knives, refrigerators, cutting tables and similar items commonly found in kitchens, for the record states that Brinker's restaurants use these items for cutting, cooking, mixing or blending ingredients such as for salsa; baking, frying or otherwise cooking raw foods; keeping its salsa and other food and drink ingredients chilled or warm during their preparation to prevent spoilage or to hold them until there was a need to assemble or mix them into the final food item; and generally presenting food and drinks to customers in an attractive way in individual servings.

Also during the period at issue, the restaurants run by Brinker were furnished with chairs, bar stools, tables, menus, dishes, tableware, glassware, booster seats, high chairs and similar items. Customers were served meals on the plates, from which they ate while sitting at the tables and using the silverware and glasses, as in other restaurants. The cost of these items was included in each restaurant's overhead. Brinker charges the same prices for meals and drinks for dine-in consumption as for sales "to go."

Brinker initially paid use tax for the period October 1, 2003, through December 31, 2004, but in October 2006, Brinker sought a refund of $54,034.86 of the use tax it had paid. The director denied $48,966.83 of the claim, and Brinker sought review of the denial of $44,183.93 of that amount to the commission. It argued that an exemption applied under sections 144.030.2(4) and (5) and section 144.615(6) on the kitchen equipment used to make food and prepare it for serving customers as well as on furniture, silverware, plates and similar items it used to serve its customers food. The commission denied Brinker's claim. Brinker seeks review under Mo. CONST. ART. V, § 3.

## II. STANDARD OF REVIEW

The commission's decision shall be affirmed if: (1) it is authorized by law; (2) it is supported by competent and substantial evidence on the whole record; (3) mandatory procedural safeguards are not violated; and (4) it is not clearly contrary to the reasonable expectations of the General Assembly. § 621.193. "This Court reviews the AHC's interpretation of revenue laws de novo." Zip Mail Services, Inc. v. Dir. of Revenue, 16 S.W.3d 588, 590 (Mo. banc 2000). The commission's factual determinations "are upheld if supported by 'substantial evidence upon the whole record.'" Concord Publ'g House, Inc. v. Dir. of Revenue, 916 S.W.2d 186, 189 (Mo. banc 1996), quoting L & R Egg Co. v. Dir. of

**2.** One of Brinker's restaurants supplies food to other restaurants also.

*Revenue*, 796 S.W.2d 624, 625 (Mo. banc 1990).

### III. RESTAURANTS PREPARE RATHER THAN MANUFACTURE MEALS

Section 144.610.1 imposes a tax "for the privilege of storing, using or consuming within this state any article of tangible personal property." Brinker admits this taxing provision applies to the items as to which it seeks a refund of use tax but argues that it is entitled to an exemption from Missouri use tax under sections 144.615(3) and 144.030.2(4) and (5) for the stoves, refrigerators, dispensers and other items it uses to prepare food and drink for its customers. Brinker bears the burden of showing that it qualifies for an exemption. *Branson Props. U.S.A., L.P. v. Dir. of Revenue*, 110 S.W.3d 824, 825 (Mo. banc 2003). "Exemptions from taxation are to be strictly construed against the taxpayer, and any doubt is resolved in favor of application of the tax." *Sw. Bell Tel. Co. v. Dir. of Revenue*, 182 S.W.3d 226, 228 (Mo. banc 2005).

Section 144.615(3) exempts from use tax "[t]angible personal property, the sale of which ... would be *exempt from or not subject to the Missouri sales tax under the provisions of subsection 2 and 3 of section 144.030.*" (emphasis added).

Brinker argues that it qualifies for the exemptions provided in section 144.030.2(4) and (5), which it calls the "production exemptions." Brinker's theory is that when it cooks and serves food, it in effect is making a product; therefore, its restaurants qualify for these "production exemptions." It says that the commission erred in holding that these exemptions apply only to manufacturers and not to retail sale restaurants, which merely engage in preparation of food to be served to restaurant diners.

Brinker reads the exemptions too broadly. Section 144.030.2(5) exempts machinery and equipment used to expand or establish manufacturing, mining and fabricating plants from sales tax, stating:

(5) Machinery and equipment ... *purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants* in the state if such machinery and equipment is *used directly in manufacturing, mining, or fabricating* a product which is intended to be sold ultimately for final use or consumption ...

(emphasis added). While Brinker is correct that this provision does not use the word "retail," it does use the word "plants." It expressly states that the machinery and equipment must be used for new or expanded *plants* that manufacture, mine or fabricate products intended to be sold *ultimately* for final use or consumption by others. Neither Chili's, Macaroni Grill, On the Border nor Maggiano's Little Italy are plants,[3] and they do not fabricate, manufacture or mine products to be sold ultimately for final use or consumption. By its terms, this exemption simply does not apply to purchases of new or expanded kitchen equipment in Brinker's restaurants. The commission did not err in rejecting Brinker's request for a refund of $21,588.19 in use tax it paid on new or expanded plant machinery and $1,909.56 in use tax it paid on new or expanded plant equipment.

---

**3.** As relevant here, "plants" are defined as "the land, buildings, machinery, apparatus, and fixtures employed in carrying on a trade or a mechanical or other industrial business."

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1731. The restaurant business that Brinker undertakes is not a trade, nor is it a mechanical or other industrial business.

■ Brinker also argues some of its kitchen equipment qualifies for an exemption for replacement machinery, equipment and parts under section 144.030.2(4), which states:

> (4) Replacement machinery, equipment, and parts and materials and supplies solely required for the installation or construction of such replacement machinery, equipment, and parts, *used directly in manufacturing, mining, fabricating or producing* a product which is intended to be sold ultimately for final use or consumption . . .

■ While section 144.030.2(4) does not repeat the reference to plants expressly, it says it applies to *replacement* machinery, equipment and parts. As just noted, machinery, equipment and parts qualify for the exemption only if they are used to establish new or expanded manufacturing, mining or fabricating plants. "[W]ords used in proximity to one another must be considered together." *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 431 (Mo. banc 2009). Moreover, statutory provisions are "not read in isolation but [are] construed together, and if reasonably possible, the provisions will be harmonized with each other." *Bachtel v. Miller Cnty. Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. banc 2003). "Exemptions are interpreted to give effect to the General Assembly's intent, using the plain and ordinary meaning of the words." *Branson Props. U.S.A.*, 110 S.W.3d at 825–26. The legislature did not intend to allow a use tax exemption for replacement machinery, equipment or parts that is broader than that for the equipment it replaces.

Brinker argues that this interpretation of the exemption is too narrow and that the words "manufacture" and "produce" should be read broadly to include preparing and cooking food. Brinker argues as though all that is required to avail itself of the exemption is simply to refer to preparing food as producing it and cooking food as manufacturing or transforming it.

Brinker's argument ignores the fact that it is seeking to take advantage of an *exemption*. "An exemption is allowed only upon clear and unequivocal proof, and doubts are resolved against the party claiming it." *Id.* at 825.[4] This Court will give the language used in the statute a narrow construction, not the exceedingly broad and peculiar meaning argued for by Brinker. *Dir. of Revenue v. Armco, Inc.*, 787 S.W.2d 722, 724 (Mo.1990) ("Canons of construction direct that exemption statutes be strictly construed against the taxpayer").

■ The narrow construction of this exemption also comports with the common sense understanding of the words used in the statute. "Absent a statutory definition, the primary rule of statutory inter-

---

4. This allocation of the burden of proof is rooted in statute. In *Utilicorp United, Inc. v. Dir. of Revenue*, 75 S.W.3d 725, 727 n. 5 (Mo. banc 2001), this Court explained:

> Section 136.300.1 states in part: "With respect to any issue relevant to ascertaining the tax liability of a taxpayer all laws of the state imposing a tax shall be strictly construed against the taxing authority in favor of the taxpayer. The director of revenue shall have the burden of proof with respect to any factual issue relevant to ascertaining the liability of a taxpayer...." However,

section 136.300.2 states in full: "This section shall not apply to any issue with respect to the applicability of any tax exemption or credit." Section 621.050.2 states in part: "In any proceeding before the administrative hearing commission under this section the burden of proof shall be on the taxpayer...." Thus this Court has concluded that, while it is the director's burden to show a tax liability, it is the taxpayer's burden to establish the right to an exemption.

pretation is to give effect to legislative intent as reflected in the plain language of the statute." *Akins v. Dir. of Revenue,* 303 S.W.3d 563, 565 (Mo. banc 2010). In lay terminology, one does not speak of a restaurant as manufacturing or producing food or drink; instead, restaurants prepare, cook and serve food and drink to their customers. This is how the term "restaurant" is used whenever it appears in Missouri's taxing and tourism statutes. For example, section 144.010.1(10)(e) defines "sale at retail" in relevant part as sales of "meals and drinks *furnished* " in a place where "meals or drinks are regularly served to the public" (emphasis added).[5] Section 67.671.4(1) provides for a tourism tax on the sale of food and beverages "sold for consumption on the premises of all restaurants ... or other establishments *which are primarily used to provide food and beverage services* " (emphasis added). Section 144.014.2 defines the word "food" and in so doing refers to "food prepared by such establishment for immediate consumption ... including, but not limited to, sales of food by any restaurant, fast food restaurant, delicatessen, eating house, or café." Section 66.500(3) defines 'food establishment' as any "restaurant which sells food at retail...." *Accord* § 82.850.1(2), RSMo Supp.2009; § 92.325(3); § 94.805.

These definitions have in common that they treat restaurants as furnishing food and beverages to the public at retail, not as plants or production facilities that manufacture, mine, fabricate or produce food or drink. Had the legislature intended to include restaurants or restaurant equipment within the exemptions set forth in section 144.030.2, then it would have added the word "restaurant" to those statutes, as it did in the various statutes just cited when it wanted to impose or exempt certain establishments from various taxes,

and just as it provided specific exemptions in other subsections of section 144.030 for items or processes ranging from "feed for livestock or poultry" and "grain to be converted into foodstuffs which are to be sold ultimately in processed form at retail," § 144.030.2(1), to "materials, replacement parts, and equipment [for] aircraft, aircraft power plants, and aircraft accessories." § 144.030.2(40) RSMo, Supp.2009.

The legislature did not include the words "restaurant" or "preparation" or "furnishing" or "serving" in § 144.030.2, nor did it elsewhere indicate that it intended the words "manufacturing," "mining," "fabricating" or "producing" to be used in a broad sense to include preparation and cooking of food for service in a restaurant. The commission did not err in denying Brinker's request for refunds of $10,181.08, $1,310.54 and $297.59, respectively, paid in use tax on the replacement machinery, equipment and parts it used to prepare and cook food in its restaurants.

## IV. A RESTAURANT DOES NOT SELL A CUSTOMER THE FURNITURE ON WHICH SHE SITS OR THE TABLEWARE SHE USES TO EAT

 Brinker also seeks a refund of the use taxes it paid on the furniture at which customers sit and eat as well as on the items in and on which their food is served, arguing that it sells use of these items to its customers, albeit temporarily, and that this either exempts or excludes it from paying use tax on these items.

Section 144.610.1 imposes a use tax "for the privilege of storing, using or consuming within this state any article of tangible personal property." The definition of "use" excludes from the terms of the use tax *"the sale of property* in the regular

---

**5.** *See* § 144.020.1(6) (tax on "meals and drinks furnished at any ... restaurant ...").

course of business." § 144.605(13) (emphasis added); *Westwood Country Club v. Dir. of Revenue,* 6 S.W.3d 885, 887 (Mo. banc 1999). Brinker argues that this exclusion applies to it because it sells use of the tables, chairs, plates, glasses, cutlery and other items it uses to serve meals to its customers.[6]

▌ Section 144.605(7) defines "sale" as "any transfer, barter or exchange of the title or ownership of tangible personal property, or the right to use, store or consume the same, for a consideration paid or to be paid...." As such, for a transaction to constitute a sale or resale, three elements must be satisfied: (1) a transfer, barter, or exchange; (2) of the title or ownership of tangible personal property, or the right to use, store, or consume the same; (3) for consideration paid or to be paid. *Kansas City Power & Light Co. v. Dir. of Revenue,* 83 S.W.3d 548, 551 (Mo. banc 2002).

Brinker's theory is that as it includes the cost of the tables, chairs, silverware and dishes with and on which it serves its customers in its overhead, then each time it serves food to its customers, those customers not only are purchasing the food Brinker has prepared but also are buying the right to use the furniture on which they sit and the table on which the server places their food and the silverware with which they eat. Brinker argues, therefore, that it should be considered to have obtained these service items and furniture solely for the purpose of "reselling" them to its customers with their food.

This argument proves too much. As every cost normally is included in overhead one way or another (at least if the business is to break even), it would mean that everything a customer touches in the restaurant in that sense is resold and not subject to use tax. That cannot be what the legislature intended when it enacted these statutes. A "transfer, barter, or exchange" of "the title or ownership of tangible personal property, or the right to use, store, or consume the same" does not occur when Brinker provides the benches, chairs, bar stools, tables, menus, dishes, tableware, glassware, booster seats and high chairs to supply meals to its customers conveniently. While Brinker customers do acquire temporary use in the sense that the reusable items are used as a mechanism to facilitate delivery of their food and drink, this degree of control is *de minimus* and does not rise to the level of an actual transfer of a right to use. The plates, tables and chairs are not in any real sense transferred to customers any more than a piece of the restaurant floor is transferred to a customer when he or she walks on it or a bottle of ketchup is transferred when a customer picks it up to use or inspect it or a menu is transferred to a customer who reads it.

---

**6.** The director argues that this property is subject to the use tax because it is not bought for sale and that the issue is whether it is held for resale and so qualifies for an exemption to the use tax for tangible personal property otherwise subject to tax but, *"held* by processors, retailers, importers, manufacturers, wholesalers, or jobbers solely *for resale* in the regular course of business." § 144.615.6 (emphasis added). The practical consequence of whether to consider the claim under one or the other statute is its effect on the burden of proof; the burden is on the director to prove that a sale is included rather than excluded from tax, *Utilicorp,* 75 S.W.3d at 727 n. 5, but if it is included, then the burden is on the taxpayer to show that an exemption to an otherwise applicable tax applies, *see Branson Props. U.S.A.,* 110 S.W.3d at 825. For purposes of this case, however, this Court need not determine under which provision the use of these items to serve and provide food to restaurant customers would fall because either would require Brinker to transfer its furniture, tableware or other items to its customers, which it does not do.

The cases cited by Brinker to support a contrary position are inapposite. Those cases finding a sale when the cost was included in overhead did so because, in fact, title was passed from the taxpayer to a third party in exchange for a purchase, and, therefore, a permanent transfer had occurred. *See, e.g., Kansas City Royals Baseball Corp. v. Dir. of Revenue,* 32 S.W.3d 560, 561 (Mo. banc 2000) (with purchase of admission tickets, fans received outright title to promotional baseball caps, trading cards, baseball gloves, batting gloves and T-shirts); *Aladdin's Castle, Inc. v. Dir. of Revenue,* 916 S.W.2d 196, 197 (Mo. banc 1996) (in exchange for tickets supplied by arcade games, customers could obtain outright title to arcade prizes); *Sipco, Inc. v. Dir. of Revenue,* 875 S.W.2d 539, 542 (Mo. banc 1994) (customers received outright title to the dry ice packaged in pork shipments and used to preserve the pork); *King v. Nat'l Super Mkts., Inc.,* 653 S.W.2d 220, 222 (Mo. banc 1983) (customers received outright title to paper sacks the grocery store used to bag groceries).

In those few cases finding a sale took place absent a permanent transfer of possession and title, the taxpayer did not merely incorporate the cost of the items in overhead, as Brinker has done here, but charged an additional consideration for the right to use the item for an extended period. For example, in *Ronnoco Coffee Co., Inc. v. Dir. of Revenue,* 185 S.W.3d 676, 677 (Mo. banc 2006), the taxpayer sought a section 144.615(6) resale exemption for the use tax paid on certain coffee equipment. A grocery store could choose to buy the coffee equipment and pay one price for coffee beans it purchased from Ronnoco, or it could choose not to buy the coffee equipment but be permitted to use it so long as the store paid a higher price for coffee beans as well as a $1 loan fee for use of the equipment, subject to Ronnoco's

right to remove its equipment at any time. This Court held that Ronnoco's charge of separate consideration for the "loan agreement" of the equipment constituted a transfer for consideration. *Id.* at 677–79.

Similarly, in *Weather Guard, Inc. v. Dir. of Revenue,* 746 S.W.2d 657, 657–58 (Mo. App.1988), the court of appeals held that insulation machines temporarily provided to customers pursuant to a "Rental Machine Agreement" constituted a transfer of a right to use the machines for consideration because an additional amount was charged for insulation purchased by those customers as compared with the price charged to customers who either bought the machines outright or used their own machines.

Here, the chairs, tables, dishes, tableware and similar items are used to serve or supply the food conveniently to Brinker's customers and allow them to have a place at which to sit to eat it. No additional charge is made to customers for the privilege of sitting in a chair, eating at a table, or using glasses or silverware. Customers are not charged different sums depending on how many of these serving items they use or at what kind of chair or table they sit, and "to go" customers are charged the same price for food as are eat-in customers. To charge a separate fee certainly would be detrimental to the Brinker's business because customers come to Brinker's restaurants to eat the food, not to rent use of bowls, cups and tables; the items as to which a use tax exclusion or exemption is sought are used simply as a delivery mechanism for what customers are buying—the food and beverages. Brinker fails to show, within the meaning of the statutes, a transfer of a right to use the furniture, menus, dishes, glassware, booster seats, high chairs and other items it provided at its restaurants for consideration. It cannot avail itself of

an exemption under section 144.615(6) or an exclusion under section 144.605(13).

## V. CONCLUSION

For the foregoing reasons, the decision of the commission is affirmed.

TEITELMAN, RUSSELL, WOLFF, BRECKENRIDGE, and FISCHER, JJ., concur.

PRICE, C.J., dissents in separate opinion filed.

WILLIAM RAY PRICE, JR., Chief Justice, dissenting.

The majority holds that Brinker is not entitled to tax exemptions under sections 144.030.2(4) and (5), RSMO 2000, because restaurants are not "plants" and because Brinker does not manufacture a product. I respectfully disagree with the majority on both points.

### I. Restaurants Are Plants.

Section 144.030.2(4) allows tax exemptions for replacement equipment "used directly in manufacturing, mining, fabricating or producing a product which is intended to be sold ultimately for final use or consumption." § 144.030.2(4). Section 144.030.2(5) allows tax exemptions for:

> Machinery and equipment . . . purchased and used to establish new or to expand existing manufacturing, mining or fabricating *plants* in the state if such machinery and equipment is used directly in manufacturing, mining, or fabricating a product which is intended to be sold ultimately for final use or consumption.

§ 144.030.2(5) (emphasis added).

Because "plants" are not defined in the statute, the majority properly turns to the dictionary, which defines a plant as "the land, buildings, machinery, apparatus, and fixtures employed in carrying on a *trade* or a mechanical or other industrial business." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1731 (emphasis added). The majority fails, however, to finish the process by examining the definition of "trade." The dictionary defines a trade as "an occupation requiring manual or mechanical skill and training." *Id.* at 2421. Cooking and preparing food is a trade that requires manual skill and training. Brinker's restaurants are "land, buildings, machinery, apparatus, and fixtures employed in carrying on a trade" and fit within the language of sections 144.030.2(4) and (5) according to the dictionary definitions used by the majority.

Prior decisions of this Court repeatedly have allowed a broad interpretation of manufacturing plants and processes for purposes of this exemption. *Southwestern Bell Tele. Co. v. Dir. of Revenue,* 78 S.W.3d 763 (Mo. banc 2002) (telephone company performing telecommunications services); *DST Sys., Inc. v. Dir. of Revenue,* 43 S.W.3d 799 (Mo. banc 2001) (newspaper publishing); *Bridge Data Co. v. Dir. of Revenue,* 794 S.W.2d 204 (Mo. banc 1990) (financial company that supplied information about securities traded on public markets), *abrogated on other grounds by International Bus. Mach. Corp. v. Dir. of Revenue,* 958 S.W.2d 554 (Mo. banc 1997).

### II. Cooking Is Manufacturing Under the Statute.

The process of preparing food for consumption by Brinker's patrons is manufacturing. Manufacturing is "the alteration or physical change of an object or material in such a way that produces an article with a use, identity, and value different from the use, identity, and value of the original." *Branson Prop. USA, L.P. v. Dir. of Revenue,* 110 S.W.3d 824, 826 (Mo. banc 2003). Acts that fall outside subdivisions (4) and (5) generally involve repairing or transmit-

ting products rather than creating output that has a distinct use, identity or value. *See Utilicorp United v. Dir. of Revenue,* 75 S.W.3d 725, 729 (Mo. banc 2001) (transmitting or distributing electricity); *Unitog Rental Services v. Dir. of Revenue,* 779 S.W.2d 568, 570–71 (Mo. banc 1989) (cleaning and repairing uniforms); *State ex rel. AMF Inc. v. Spradling,* 518 S.W.2d 58, 61–62 (Mo.1974) (retreading or recapping tires).

Again, this Court repeatedly has allowed a broad interpretation of what output is sufficient to be considered manufacturing. *See Concord Publ'g House, Inc. v. Dir. of Revenue,* 916 S.W.2d 186, 191 (Mo. banc 1996) (manipulating and affixing words onto a page to create a newspaper); *Jackson Excavating v. Administrative Hearing Comm'n,* 646 S.W.2d 48, 51 (Mo.1983) (treating and purifying water); *Wilson & Co., Inc. v. Department of Revenue,* 531 S.W.2d 752, 755 (Mo.1976).

In *Wilson,* this Court held that converting live hogs into marketable portions of food fit for human consumption was manufacturing. *Id.* Like in *Wilson,* Brinker's restaurants also take raw ingredients and transform them into articles ready for human consumption. The resulting *food* is distinct from the original ingredients, and the finished product is generally twice as valuable as the original ingredients. For the purposes of section 144.030.2, there can be no valid distinction between a facility that prepares food for wholesale consumption and one that prepares food for retail consumption.

The legislature enacted sections 144.030.2(4) and (5) to "encourage the production of items ultimately subject to sales tax and to encourage the location and expansion of industry in Missouri." *Concord Publ'g House,* 916 S.W.2d at 190. By applying an unduly narrow construction to this exemption, the majority frustrates the legislative intent of creating jobs and nurturing small business in Missouri.

For the foregoing reasons, I respectfully dissent.